**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 98-60496
consolidated with
No. 98-60811
Summary Calendar

RODALTON HART, ET AL.,

Plaintiffs,

RODALTON HART; JOSEPH BURRELL; EDWARD MURTAGH; CARL PEPPER;
RICHARD PERRY; GEORGE T. WYNNE; WALTER L. UPCHURCH; TOM SLACK;
SHARPE PLANTING COMPANY II, a Partnership; L&L PLANTING CO., a
Partnership,

Plaintiffs-Appellants,

VERSUS

BAYER CORPORATION; FMC CORPORATION; ZENECA INC.; AMERICAN
CYANAMID COMPANY; RHONE-POULENC INCORPORATED; E.I. DUPONT DE
NEMOURS AND COMPANY; VALENT U.S.A. CORPORATION; CIBA-GEIGY
CORPORATION; AND LARRY MAKAMSON,

Defendants-Appellees.

Appeals from the United States District Court
For the Southern District of Mississippi

January 6, 2000

Before DAVIS, DUHÉ, and PARKER, Circuit Judges:

ROBERT M. PARKER, Circuit Judge:

Plaintiffs brought state-law claims alleging that various
pesticides manufactured and marketed by the corporate defendants,
and one pesticide promoted by individual defendant, corporate agent
Larry Makamson, failed to control or prevent tobacco budworm
infestation of their crops ultimately resulting in substantial

damage to their crops.  Plaintiffs appeal dismissal of their case by the United States District Court for the Southern District of Mississippi, Jackson Division.  Specifically, plaintiffs appeal from the grant of judgment on the pleadings in favor of defendants.  While this order constituted the final adjudication of the case, the order incorporated earlier district court rulings on preemption and fraudulent joinder.  Since, these rulings formed the legal basis for the district court's dismissal, they are the substantive decisions we must review on appeal.  We REVERSE and REMAND to the district court with instructions to remand the case to state court.

## I.  FACTS AND PROCEDURAL HISTORY

### A.    Background

Rodalton Hart ("Hart"); Joseph Burrell; Edward Murtagh; Carl Pepper; Richard Perry; George T. Wynne; Walter L. Upchurch;[1] **Tom Slack; Sharpe Planting Company II, a Partnership; and L&L Planting Company, a Partnership, brought suit against pesticide manufacturers Bayer Corp., FMC Corp., Zeneca Incorporated, American Cyanamid, Rhone-Poulenc Incorporated, E.I. Dupont De Nemours and Company, Valent U.S.A. Corp., Ciba-Geigy Corporation, and agent Larry Makamson.  Plaintiffs are cotton farmers who applied defendants' chemicals to enhance production by controlling crop diseases and infestations.  During the 1995 cotton season, despite application of defendants' chemicals, Plaintiffs were unable to**

---

[1] By joint stipulation of the parties, that portion of the appeal brought by Plaintiff-Appellant Walter L. Upchurch against Defendant-Appellee American Cyanamid Company was dismissed as of February 16, 1999.

**successfully control or prevent budworm infestation of their crops. Nevertheless, the corporate defendants and their agents, such as Makamson, allegedly continued touting the effectiveness of their chemicals. The alleged failure of the chemicals to perform, the alleged misrepresentations by defendants concerning the effectiveness of the chemicals, and the resulting losses suffered by plaintiffs prompted this lawsuit.**

**B.** **Procedural History**

Plaintiffs filed their complaint in Mississippi state court asserting four state common-law causes of action: breach of the implied warranty of merchantability (actually a breach of implied warranty of fitness for a particular purpose claim), breach of good faith and fair dealing, intentional infliction of emotional distress, and negligence. Plaintiffs did not assert any federal causes of action. On June 3, 1996, defendants removed to federal district court claiming that there was both federal question and diversity jurisdiction. Defendants claimed federal question jurisdiction existed based on the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C. § 136 *et seq.*, which defendants raised as a defense to plaintiffs' claims. Diversity jurisdiction purportedly was proper because plaintiffs were Mississippi citizens, all corporate Defendants were citizens of other jurisdictions, and the sole in-state defendant, Larry Makamson, was fraudulently joined. The district court denied plaintiffs' motion to remand on the grounds that it had subject matter jurisdiction upon the dual theories advanced by Defendants.

3

After addressing jurisdiction, the parties turned to the question of whether FIFRA preempted Plaintiffs' state-law claims. Ultimately, the district court agreed with defendants' arguments that FIFRA completely precluded all of plaintiffs' state-law claims. Nevertheless, defendants did not immediately seek dismissal of the case. Shortly thereafter, the district court entered an order staying discovery. Some four months later, the parties agreed that the case was ripe for dismissal based upon the court's earlier rulings on preemption and fraudulent joinder. Defendants then moved for judgment on the pleadings and the district court dismissed plaintiffs' claims but only as to defendant Makamson. Plaintiffs appealed that ruling and sought permission to ask the district court for an order dismissing the case as to the remaining defendants. We granted permission, and on November, 23, 1998, the district court issued the requested order. Plaintiffs then filed a notice of appeal on December 2, 1998, and they are now before us appealing the district court's rulings.

## II. DISCUSSION

Plaintiffs raise three issues on appeal. First, plaintiffs maintain that FIFRA does not provide a basis for federal jurisdiction in this case because it is not a complete preemption statute. Second, plaintiffs contend that the lower court erred in finding that the in-state defendant was fraudulently joined since plaintiffs have properly asserted claims against Makamson for which he could be found independently liable. Third, plaintiffs argue that while FIFRA may preempt some state-law damage actions, it does

4

not bar state common-law claims that are not based upon inadequacies in labeling or packaging. Since we hold that the district court erred in concluding that (1) a "FIFRA defense" is sufficient to establish federal question jurisdiction, and (2) corporate agent Makamson was fraudulently joined, neither we nor the district court have jurisdiction to reach the issue of whether FIFRA bars plaintiffs' state-law claims.

## A. Standard of Review

We begin by establishing the appropriate standard of review. This court reviews *de novo* a district court's conclusions on questions of law. *Voest-Alpine Trading USA Corp. v. Bank of China*, 142 F.3d 887, 891 (5th Cir. 1998). The district court's fraudulent joinder analysis turned solely upon such a question, namely the proper interpretation of Mississippi tort law. Judgment for defendants also was premised upon the district court's ruling on federal preemption. The district court's preemption ruling is a determination of original jurisdiction, and therefore, is also subject to *de novo* review. *See Hook v. Morrison Milling Co.*, 38 F.3d 776, 780 (5th Cir. 1994).

## B. Absence of Federal Question Jurisdiction

Federal question jurisdiction arises when a plaintiffs' set forth allegations "founded on a claim or right arising under the Constitution, treaties or laws of the United States." *See* 28 U.S.C. § 1441(b), § 1331. In general, questions concerning federal question jurisdiction are resolved by application of the "well-pleaded complaint" rule. *Louisville & Nashville R.R. v.*

*Mottley*, 211 U.S. 149, 152-53 (1908). The rule provides that the plaintiff's properly pleaded complaint governs the jurisdictional inquiry. If, on its face, the plaintiff's complaint raises no issue of federal law, federal question jurisdiction is lacking. *See Franchise Tax Bd. v. Laborers Vacation Trust*, 463 U.S. 1, 10 (1983).

Since, on its face, plaintiffs' complaint sets forth only state-law claims, defendants relied upon the "complete preemption" exception to the well-pleaded-complaint rule in their efforts to establish jurisdiction. Under this exception, if a federal law is found to "completely preempt" a field of state law, the state-law claims in the plaintiff's complaint will be "recharacterized" as stating a federal cause of action. *See Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 (1987)("Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law."). The recharacterization of a plaintiff's state-law claim will also make removal proper on the basis of federal question jurisdiction. *See Heimann v. National Elevator Indus. Pension Fund,* 187 F.3d 493, 499 (5th Cir. 1999).

Yet the mere fact that a given federal law might "apply" or even provide a federal defense to a state-law cause of action, is insufficient alone to establish federal question jurisdiction. To give rise to federal question jurisdiction, a court must find complete preemption. *See Franchise Tax Bd.*, 463 U.S. at 23-24.

6

"In complete preemption a federal court finds that Congress desired to control the adjudication of the federal cause of action to such an extent that it did not just provide a federal defense to the application of state law; rather, it replaced the state law with federal law and made it clear that the defendant has the ability to seek adjudication of the federal claim in a federal forum."  14B CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3722.1 (3d ed. 1998).  In sum, to establish federal question jurisdiction through the invocation of a federal preemption defense, the defendant must demonstrate that Congress intended not just to "preempt a state law to some degree," but to altogether substitute "a federal cause of action for a state cause of action."  *Schmeling v. NORDAM*, 97 F.3d 1336, 1341 (10th Cir. 1996).

Here, defendants argue that all of plaintiffs' state common law claims asserted against them are, in reality, federal claims.  Defendants contend that FIFRA,[2] **by its express prohibition on state-imposed labeling or packaging requirements, so throughly preempts all state common law claims in the field of pesticide regulation that federal question jurisdiction is created.  This is a fundamental misreading of the statute and relevant case law.**

**We know that FIFRA does not completely preempt all state or local regulation of pesticides.  In fact, the Supreme Court has**

---

   [2] FIFRA's preemption language is found in 7 U.S.C. § 136v(b) (1994), which provides:
      (b) Uniformity
      [The States] shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter.

7

expressly held that FIFRA does not preempt local pesticide ordinances:

> FIFRA ... leaves substantial portions of the field vacant.... Whatever else FIFRA may supplant, it does not occupy the field of pesticide regulation in general.... Rather, it acts to ensure that the States could continue to regulate use and sales even where, such as with regard to the banning of mislabeled products, a narrow pre-emptive overlap might occur.

*Wisconsin Public Intervenor v. Mortier*, 501 U.S. 597, 613-14 (1991). "Tellingly, it is precisely this expression, 'occupy the field,' that courts have repeatedly used to describe complete preemption, and it is exactly this 'occupying of the field' which the Supreme Court tells us does not exist in FIFRA." *Ell v. S.E.T. Landscape Design, Inc.*, 34 F. Supp. 2d 188, 193 (S.D.N.Y. 1999). Furthermore, we have determined that FIFRA preemption does not extend to non-labeling state common-law causes of action. *See MacDonald v. Monsanto*, 27 F.3d 1021, 1024 (5th Cir. 1994) ("This is not to say, however, that [] all common law is preempted by FIFRA -- § 136v(b) does not preempt common law that is unconcerned with herbicide labeling, nor does it preempt those state laws concerned with herbicide labeling that do not impose any requirement 'in addition to or different from' the FIFRA requirements.").[3]

---

[3]  In *MacDonald,* we were not confronted with the issue of whether federal question jurisdiction is created by a FIFRA defense because the defendants removed the case to federal court based upon diversity of citizenship. *See* 27 F.3d at 1023. Nevertheless, it is worth noting that our holding in *MacDonald* -- that FIFRA's preemptive power reaches both positive enactments and common law actions, *but not all common law actions* – is inconsistent with a finding that FIFRA represents a complete preemption statute. Here, plaintiffs assert a variety of state common law causes of action none of which directly relate to product labeling. Defendants

The text of the statute itself belies any claim that Congress intended it to operate as a complete preemption statute.  FIFRA begins with an *anti*-preemption provision:

> Authority of the States
> (a) In general
> *A state may regulate the sale or use of any federally registered pesticide or device in the State*, but only if and to the extent the regulation does not permit any sale or use prohibited by this subchapter

7 U.S.C. § 136v(a) (1994) (emphasis added).  Rather than disarm the states in the area of pesticide regulation, Congress chose to expressly confirm the states' "historic police powers" to regulate products that may affect the health and safety of their citizens. *See MacDonald*, 27 F.3d at 1023.  As the Supreme Court explained in *Mortier*, the legislative history only reenforces this conclusion:

> We agree that neither the language of the statute nor its legislative history, standing alone, would suffice to pre-empt local regulation.  But it is also our view that, even when considered together, the language and the legislative materials relied on below are insufficient to demonstrate the necessary Congressional intent to pre-empt.  As for the statutory language, it is wholly inadequate to convey an express preemptive intent on its own.  Section 136v plainly authorizes the "States" to regulate pesticides . . .

501 U.S. at 607.  In short, the Supreme Court not only failed to find the requisite expression of congressional intent to occupy the

---

contend that all of these claims are really disguised labeling claims which fall within the preemptive (read preclusive) scope of FIFRA.  This is the question that we cannot reach, because even if all of plaintiffs' claims are in fact barred because FIFRA provides a federal defense to each of these state law claims, the fact that many state law causes of action survive means that the statute does not establish federal question jurisdiction over the case.  Therefore, defendants are not deprived of their FIFRA defenses, they are only deprived of a federal forum in which to utilize their defenses.

field of pesticide regulation, it instead found an explicit grant of authority to the states. The inexorable conclusion to be drawn is that FIFRA is not a complete preemption statute, and therefore, federal question jurisdiction is not established.

Many courts have reached this same conclusion through the application of our analysis in *Aaron v. National Union Fire Ins. Co.*, 876 F.2d 1157 (5th Cir. 1989), where we held that the Longshore and Harbor Workers' Compensation Act did not so completely preempt state law as to authorize removal on the basis of federal question jurisdiction. *See, e.g., Rodriguez v. Shell Oil Co.*, 818 F. Supp. 1013 (S.D. Tex. 1993). Our decision was motivated by our findings that the statute: (1) did not contain a civil enforcement provision, (2) did not include a specific grant of federal subject matter jurisdiction, and (3) did not reflect a clear manifestation of congressional intent to make preempted state-law claims removable to federal court. *See Aaron*, 876 F.2d at 1163-66. Applying the *Aaron* analysis to the instant case, we find that FIFRA fails all three prongs of the test.

If we err in this determination, we enjoy plentiful company. The vast majority of district courts that have faced this jurisdictional question have concluded that FIFRA does not completely preempt state law and thus a "FIFRA defense" does not establish federal question jurisdiction. *See Ell v. S.E.T. Landscape Design, Inc.*, 34 F. Supp. 2d 188, 193 (S.D.N.Y. 1999); *Thigpen v. Cheminova*, 992 F. Supp. 864, 869 (S.D. Miss. 1997); *Murray v. Commonwealth Edison*, 905 F. Supp. 512, 514 (N.D .Ill.

10

1995); *Rodriguez*, 818 F. Supp. at 1016-18.  Additionally, the only circuit court to squarely address the issue also determined that FIFRA does not completely preempt state law.  *See Hurt v. Dow Chemical Co.*, 963 F.2d 1142 (8th Cir. 1992).[4]

Since there is no federal question jurisdiction in the instant case, the district court's ability to hear the case should have turned exclusively upon the existence of diversity jurisdiction.  In turn, the existence of diversity jurisdiction rests upon a finding that joinder of Makamson was fraudulent.

## C.  Absence of Diversity Jurisdiction

The second possible basis for federal subject matter jurisdiction is diversity of citizenship.  Plaintiffs in this case are Mississippi citizens whereas all of the corporate defendants are non-residents.  It is the presence of diversity-destroying in-state defendant Makamson that, if properly included in the action, prevents federal jurisdiction.  The district court concluded that Makamson had been fraudulently joined as a defendant in order to defeat diversity jurisdiction.  Plaintiffs contend that the

---

[4] Defendants point to two aberrant, unpublished district court opinions to support their argument, both cases from within the Fifth Circuit.  *See LaCoste v. Stamps*, 1995 WL 442070 (E.D. La. July 25, 1995); *Burge v. Jones*, 1992 WL 415263 (S.D. Tex. Nov. 18, 1992).  The reasoning in neither case is persuasive.  Both courts erred by (1) failing to distinguish between ordinary preemption and complete preemption, and (2) mistakenly relying upon FIFRA cases removed based on diversity jurisdiction, not complete preemption federal question jurisdiction.  Subsequent to these decisions, both courts have applied the *Aaron* test and reached the conclusion that FIFRA does not confer federal question jurisdiction.  *See Martinez v. Dow Chemical Co.*, Nos. 95-3212, 95-3214, 1996 WL 502461 (E.D. La. Sept. 4, 1996); *Rodriguez*, 818 F. Supp. 1013 (S.D. Tex. 1993).

district court erred in this finding.

"The burden of persuasion placed upon those who cry 'fraudulent joinder' is indeed a heavy one." *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. 1981). In *Dodson v. Spiliada Maritime Corp.*, 951 F.2d 40 (5th Cir.1992), the standard for evaluating such a claim were summarized as follows:

> Where charges of fraudulent joinder are used to establish [federal] jurisdiction, the removing party has the burden of proving the claimed fraud.... To prove their allegation of fraudulent joinder [removing parties] must demonstrate that there is no possibility that [plaintiff] would be able to establish a cause of action against them in state court. In evaluating fraudulent joinder claims, we must initially resolve all disputed questions of fact and all ambiguities in the controlling state law in favor of the non-removing party. *We are then to determine whether that party has any possibility of recovery against the party whose joinder is questioned.*

*Dodson,* 951 F.2d at 42 (citations omitted) (emphasis added). In many instances, we have cautioned against "pretrying a case to determine removal jurisdiction," stating that fraudulent joinder claims can be resolved by "piercing the pleadings" and considering summary judgment-type evidence such as affidavits and deposition testimony. *Carriere v. Sears, Roebuck and Co.*, 893 F.2d 98, 100 (5th Cir. 1990). The district court failed to follow this procedure. Consequently, we are limited to a review of the allegations in the complaint in determining whether Makamson could be subject to individual liability.

The question of whether plaintiffs could possibly establish a claim against Makamson in state court is resolved by reference to Mississippi law. In circumstances where a defendant acts as an

12

agent for a known principal, the general rule in Mississippi law is that the defendant-agent incurs no liability for a principal's breach of duty. *See Moore v. Interstate Fire Insurance Company*, 717 F. Supp. 1193 (S.D. Miss. 1989); *Schoonover v. West American Ins. Co.*, 665 F. Supp. 511 (S.D. Miss. 1987) (interpreting Mississippi law). On the other hand, an agent for a disclosed principal can be held personally liable for his own tortious acts committed within the scope of his employment. *Wheeler v. Frito-Lay, Inc.*, 743 F. Supp. 483, 487 (S.D. Miss. 1990)(holding that plaintiff had stated a possible claim against employee-driver for negligent driving within the scope of employment). The agent is subject to personal liability when he "directly participates in or authorizes the commission of a tort," *Id.* (quoting *Mississippi Printing Co., Inc. v. Maris, West & Baker, Inc.*, 492 So. 2d 977, 978 (Miss. 1986)), but individual liability may not be predicated merely on his connection to the corporation but must have as its foundation "individual wrongdoing." *Turner v. Wilson*, 620 So. 2d 545, 548 (Miss. 1993). "The thrust of the general rule is that the officer [or agent] to be held personally liable must have some direct, personal participation in the tort, as where the defendant was the 'guiding spirit' behind the wrongful conduct ... or the 'central figure' in the challenged corporate activity." *Mozingo v. Correct Mfg. Corp.,* 752 F.2d 168, 173 (5th Cir. 1985) (quotations omitted).

Based on our review of the pleadings, we conclude that appellees failed to demonstrate that there is *no possibility* that

plaintiffs could establish a cause of action against Makamson.  The district court in its order denying remand  based its decision entirely upon Makamson's status as a agent working within the course and scope of his employment.  Appellees use a similar analysis on appeal.  They state that all information conveyed to plaintiffs by Makamson originated with the manufacturers; therefore, he could not be anything more than a conduit for information from his principal.  Accordingly, defendants conclude that he could not be liable for dissemination of information he received from the manufacturer, "unless he knew it to be untrue."

Of course, that is exactly what plaintiffs allege in their complaint: "Mr. Makamson breached his duty by continuing to represent that Defendant FMC's products would effectively control budworms *when he knew or should have known* that the chemicals were failing to control the budworms as represented." (Emphasis added). The scenario set forth in plaintiffs' pleadings, if true, could result in liability being imposed on Makamson for his alleged continuing misrepresentations.[5]  **The fact that Makamson was acting within the course and scope of his employment is not dispositive on**

---

[5] Defendants attempt to re-characterize plaintiffs' allegations of misrepresentation as "promises of future conduct which did not concern a past or present fact."  This interpretation misreads plaintiffs' allegations which complain of "continuing" misrepresentations when "the chemicals were failing to control the budworms . . ."  This is not the type of "future promise" fraud claim that the Mississippi Supreme Court has rejected as inadequate.  *See Spragins v. Sunburst Bank*, 605 So.2d 777, 781 (Miss. 1992).

this point.[6]  The district court stated that "the conduct of Makamson must rise to the level of an independent tort, committed on his own, to remove him from the agency relationship such that he will have to answer personally for his conduct."  This misreads the proper standard.  Plaintiffs need only set forth allegations

---

[6]  Defendants also contend that the claim against Makamson is deficient because plaintiffs have failed to plead it with sufficient particularity in accordance with FED. R. CIV. P. 9(b).  While the Court agrees that plaintiffs' allegations of deceitful or deceptive behavior by Makamson are somewhat conclusory, we do not believe that the penalty should be dismissal with prejudice to re-filing.

Typically, a plaintiff's complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  To prevail on a motion to dismiss an ordinary claim under FED. R. CIV. P. 12(b) or (c), a defendant must show that "the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  However, FED. R. CIV. P. 9(b) imposes a heightened level of pleading for fraud claims:  "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994).  Although the particularity demanded by Rule 9(b) differs with the facts of each case, *see Guidry v. Bank of LaPlace*, 954 F.2d 278, 288 (5th Cir. 1992), a plaintiff pleading fraud must set forth "the who, what, when, and where . . . before access to the discovery process is granted." *Williams v. WMX Technologies, Inc.*, 112 F.3d 175, 178 (5th Cir. 1997).  Anything less fails to provide defendants with adequate notice of the nature and grounds of the claim.  *See Tuchman*, 14 F.3d at 1067.

But a plaintiff's failure to meet the specific pleading requirements should not automatically or inflexibility result in dismissal of the complaint with prejudice to re-filing. *See Cates v. International Telephone and Telegraph Corp.*, 756 F.2d 1161, 1180 (5th Cir. 1985) ("But such deficiencies do not normally justify dismissal of the suit on the merits and without leave to amend, at least not in the absence of special circumstances.").  Although a court may dismiss the claim, it should not do so without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead with particularity after being afforded repeated opportunities to do so. *See O'Brien v. National Property Analysts Partners*, 936 F.2d 674, 675-76 (2d Cir. 1991).

15

demonstrating that Makamson directly participated in the commission of a tort; there is no requirement that such allegations remove him from the agency relationship. This heightened test fails to recognize those situations in which an agent and his principal could be found to be jointly and severally liable for tortious conduct committed jointly by them.[7]

Plaintiffs' complaint, taking all allegations set forth as true and taking all inferences in a light most favorable to plaintiffs, at least raises the possibility that they could succeed in establishing a claim against Makamson under Mississippi law. Accordingly, Makamson's citizenship cannot be ignored for the purposes of determining subject matter jurisdiction. His presence in this civil action means that there is not the complete diversity of citizenship necessary to maintain federal jurisdiction over this case.

### III. CONCLUSION

For the reasons set forth above, we hold that the district court had no jurisdiction to hear this case. Removal of this case

---

[7] It is interesting to note that Plaintiffs' allegations against Makamson pass even the test articulated by the district court:

> In accordance with these principles, *an agent or other employee*, merely because of his relationship as an agent or employee, or because of the additional fact that he has acted at the direction or command of his employer, *cannot escape or exempt himself from liability to a third person for his own negligence or his own positive wrongs, such as* a trespass, an assault, the conversion of property, fraud or *misrepresentation*, defamation or other form of tortious conduct.

3 AM. JUR. 2d *Agency* § 300 (1962) (Emphasis added).

16

to federal court was improper.  Accordingly, we REVERSE the Rule 12(c) judgment in favor of defendants and REMAND the case to the district court with instructions to remand the case to the state court from whence it came.

It is so ordered.