United States Court of Appeals
Fifth Circuit

**F I L E D**

**February 14, 2007**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT
_____

No. 06-30130
_____

LOUANA BROWN; RANDY FRIEDRICH,

                                        Plaintiffs - Appellees,

                    versus

BROWN & WILLIAMSON TOBACCO CORPORATION; ET AL.,

                                        Defendants,

BROWN & WILLIAMSON TOBACCO CORPORATION,

                                   Defendant - Appellant.


_____

No. 06-30311
_____

JACK SULLIVAN; JEFFREY IGUESS; KEITH SONGER;
LESTER JOSEPH, JR.,

                                        Plaintiffs - Appellees,

                    versus

PHILIP MORRIS USA INC.,

                                        Defendants,

PHILIP MORRIS USA INC.,

                                   Defendant - Appellant.
_____

       Appeals from the United States District Court
     for the Western District of Louisiana, Lake Charles
                  USDC No. 2:03-CV-995
_____

Before JOLLY, HIGGINBOTHAM, and DENNIS, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

In this appeal, relating broadly to the marketing of "Lights" cigarettes, we consider the pre-emptive scope of the Federal Cigarette Labeling and Advertising Act ("the Labeling Act"), 15 U.S.C. § 1331 et seq.. The appellants ("Manufacturers"), Brown & Williamson Tobacco Corporation ("Brown & Williamson") and Philip Morris, Inc. ("PM USA"), challenge the district court's partial denial of their motion for summary judgment. Manufacturers contend that the district court erred when it ruled that the Labeling Act does not expressly pre-empt the Plaintiffs' state law claims for redhibition, breach of express and implied warranties, and fraudulent misrepresentation and concealment. Furthermore, they argue that the district court erred when it declined to apply the doctrine of implied conflict pre-emption to the Plaintiffs' state law claims. We hold that the district court erred in finding that Plaintiffs' claims, as presented at summary judgment, are not expressly pre-empted by the Labeling Act. Consequently we reverse and remand, directing the district court to enter a judgment dismissing all claims with prejudice.

I.

On March 28, 2003, Plaintiffs filed their Petition for Damages against PM USA, asserting claims under the Louisiana Unfair Trade Practices and Consumer Protection Act ("LUTPA") and for redhibition, breach of express and implied warranties, and fraudulent misrepresentation. Plaintiffs claimed that they were deceived by the company's marketing into believing that smokers of

2

light cigarettes consume lower tar and nicotine, and that light cigarettes are safer than "regular cigarettes." On April 24, 2003, Plaintiffs filed their Petition for Damages against Brown & Williamson, alleging the same claims. Plaintiffs seek to represent a worldwide class of persons who purchased at least a single pack of defendants' light cigarettes ("Lights") in Louisiana since 1971. They seek to recover "economic damages" as measured by "the difference between the value the product would have had at the time of sale if the representations about them had been true and the actual value to the consumer of the product in question, considering the true nature of the product." Plaintiffs do not claim that they have been injured by smoking and do not seek to recover for any illnesses allegedly caused by Lights.

The Manufacturers removed the respective cases to federal court, and moved for summary judgment, arguing that Plaintiffs' claims are barred by express and implied pre-emption. The Manufacturers also argued that the LUPTA claims were barred by La. Rev. Stat. Ann § 51:1406(4), which exempts from liability under the LUPTA "[a]ny conduct that complies with section 5(a)(1) of the Federal Trade Commission Act [15 U.S.C. 45(a)(1)]."

On August 13, 2005, the district court granted summary judgment with respect to Plaintiffs' LUTPA claim against PM USA, but rejected PM USA's express pre-emption arguments with respect to the remaining claims. On September 14, 2005, the district court entered the same order with respect to Brown & Williamson. The

3

Manufacturers moved for reconsideration, arguing that the district court had not addressed their conflict pre-emption argument and that reconsideration was appropriate in the light of Watson v. Philip Morris Cos., 420 F.3d 852 (8th Cir. 2005). On December 2, 2005, the court denied reconsideration and certified its pre-emption rulings for interlocutory appeal under 28 U.S.C. § 1292(b). We granted Manufacturers' petitions for review and consolidated the cases.

This appeal presents questions of law that are reviewed de novo. Hart v. Bayer Corp., 199 F.3d 239, 243 (5th Cir. 2000) ("This court reviews de novo a district court's conclusions on questions of law."); Frank v. Delta Airlines Inc., 314 F.3d 195, 197 (5th Cir. 2002) ("Preemption by federal law of a common law cause of action is a question of law reviewed de novo.").

## II.

The Manufacturers' pre-emption claims must be considered against the backdrop of a long history of federal cigarette advertising regulation.[1] In 1964, the Surgeon General issued a report concluding that smoking causes lung cancer. Congress responded by enacting the Labeling Act through which it sought to "establish a comprehensive Federal program to deal with cigarette

---

[1] The Manufacturers presented a regulatory history in support of their motion for summary judgment. Plaintiffs did not dispute any of the facts relating to the regulatory history, and thus they are deemed admitted. Templet v. Hydrochem, Inc., 367 F.3d 473, 480 (5th Cir. 2004)(citing Uniform Local Rule 56.2).

4

labeling and advertising with respect to any relationship between smoking and health." 15 U.S.C. § 1331. The Act had two stated goals: first, to provide the public with adequate information about "any adverse health effects of cigarette smoking by inclusion of warning notices on each package ... and in each advertisement"; and second, to prevent the national economy from being "impeded by diverse, nonuniform, and confusing cigarette labeling and advertising regulations...." Id. To promote these dual goals, Congress specified the precise warning that manufacturers must place on all packages and forbade any other state regulation requiring any other "statement relating to smoking and health ... on any cigarette package." Pub. L. No. 89-92 § 5(a). In 1969, Congress amended the Labeling Act to "expand[] the pre-emption provision with respect to the States, and at the same time, ... allow[] the FTC to regulate cigarette advertising." This amendment precluded states from imposing any "requirement or prohibition based on smoking and health ... with respect to the advertising or promotion of any cigarettes."

In 1966, the FTC developed its own testing method ("FTC method") and made it the official test for tar and nicotine level measurements. The test is conducted by a machine that smokes every cigarette in the same manner. Beginning in 1967, all advertised tar and nicotine yields had to be substantiated by the FTC method. The FTC is aware that the test method does not measure the actual amount of tar and nicotine that smokers receive, but has concluded

5

that the test provides a reasonably standardized method of presenting tar and nicotine yields in a way that can be readily understood by the public. In 1970, the FTC accepted an agreement from the manufacturers, in lieu of rulemaking, that yield measurements be disclosed in all non-permanent advertising in a standardized form. The FTC has repeatedly reevaluated the FTC method, but has thus far chosen not to modify it because (1) epidemiological studies show that persons who smoke cigarettes with lower tar as measured by the FTC method are less likely to get smoking-related diseases than those smoking higher tar cigarettes; and (2) it concluded that the only way to avoid consumer confusion was to continue to rely on a single, uniform testing standard.

Since the adoption of the FTC method, the FTC has directed that any representations about tar and nicotine measurements must be substantiated by FTC method results. Following an enforcement action against a manufacturer for stating that certain brands were "lower" in tar when the claim was not substantiated by the FTC method, the FTC declared that it would permit use of descriptive terms, i.e., "light" or "low-tar," if their use was substantiated by FTC method results. The FTC has defined low tar cigarettes as those that measure 15 milligrams or less of tar, per the FTC method. In 1992, the FTC launched an investigation focused specifically on whether terms like "lights" or "low tar" were deceptive and should be banned and reaffirmed that such terms were not deceptive if substantiated by FTC method results. In 1997, the

6

FTC reopened its investigation of whether the term "Lights" is deceptive to consumers and whether a new methodology should be adopted, but no conclusion has been reached. Despite the apparently acknowledged weaknesses in the FTC method, therefore, it remains the federal mandated standard for cigarette testing.

III.

In the light of the FTC's extensive involvement in regulating cigarette advertising, the Manufacturers argue that the district court erred in finding that Plaintiffs' state law claims for redhibition, breach of express and implied warranties, and fraud are not expressly or impliedly pre-empted by the Labeling Act. Plaintiffs, relying primarily on the Supreme Court decision in Cipollone v. Liggett Group, Inc., 505 U.S. 504 (1992), argue that the Labeling Act does not pre-empt all state common law claims. The treatment of this particular set of claims presents a question of first impression in this circuit.

The pre-emption provision of the Labeling Act provides that: "[n]o requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which shall be labeled in conformity with the provisions of this chapter." 15 U.S.C. §1334(b). In Cipollone, the Supreme Court considered the extent to which this provision pre-empted state common law actions against cigarette manufacturers. 505 U.S. at 521. Concluding that Congress did not intend to exclude all common law claims from the

7

reach of the statute's pre-emption provision, and noting the "strong presumption against pre-emption," id. at 523, a plurality of the Court held that in determining whether a particular claim is pre-empted, the court must "ask whether the legal duty that is the predicate of the common-law damages action constitutes a 'requirement or prohibition based on smoking and health' ... imposed under State law with respect to ... advertising or promotion ...." Id. at 524. The plurality then applied this test to each of the petitioner's claims and concluded that the 1969 Act pre-empted "petitioner's claims based on a failure to warn and the neutralization of federally mandated warnings to the extent that those claims rely on omissions or inclusions in respondents' advertising or promotions" but did not "pre-empt petitioner's claims based on express warranty, intentional fraud and misrepresentation, or conspiracy." Id. at 531.

The test and the analysis of the state law claims garnered only four votes.[2] Although we are not bound to follow a test supported only by a plurality of the justices, this court has previously adopted the Cipollone test in MacDonald v. Monsanto Co., 27 F.3d 1021, 1024 (5th Cir. 1994), and we are therefore bound by our own circuit precedent. Cipollone is also widely followed in other circuits. See, e.g., Rivera v. Philip Morris, Inc., 395 F.3d

---

[2] Justices Scalia and Thomas would have found all of the petitioner's state common law claims pre-empted, Cipollone, 505 U.S. at 544, while Justices Blackmun, Kennedy, and Souter would have found none of the claims pre-empted. Id. at 531.

8

1142 (9th Cir. 2005); <u>Spain v. Brown & Williamson Tobacco Corp.</u>, 363 F.3d 1183 (11th Cir. 2004); <u>Glassner v. R.J. Reynolds Tobacco Co.</u>, 223 F.3d 343 (6th Cir. 2000); <u>Philip Morris Inc. v. Harshbarger</u>, 122 F.3d 58 (1st Cir. 1997). The question on appeal, therefore, is whether the district court erred in finding that none of Plaintiffs' state law claims are predicated on a legal duty, which constitutes a requirement or prohibition based on smoking and health imposed under State law with respect to advertising or promotion. We address each claim in turn.

## A. <u>Redhibition</u>

Plaintiffs plead redhibition under the Louisiana Civil Code Article 2520, <u>et seq.</u>, alleging that Lights are defective in failing to deliver less harmful toxins than regular cigarettes, and that had Plaintiffs known of the defect, they would not have purchased them.[3] The Manufacturers contend that the redhibition

---

[3] "Redhibition is a civil law action brought on account of some defect in a thing sold, seeking to void the sale on grounds that the defect renders the thing either useless or so imperfect that the buyer would not have originally purchased it." <u>Good v. Altria Group, Inc.</u>, 436 F. Supp. 2d 132, 150 n.27 (D. Me. 2006) (citing Black's Law Dictionary 1282 (7th ed. 1999)).

Under the Louisiana Civil Code Article 2520:

> The Seller warrants the buyer against redhibitory defects, or vices, in the thing sold.
>
> A defect is redhibitory when it renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect. The existence of such a defect gives

9

claim is a repackaged "failure to warn" claim. They assert that Plaintiffs' claim is premised on the allegation that the cigarette manufacturers failed to disclose, in their labeling and in their advertising, the alleged "defect" in light cigarettes -- that is that Lights fail to deliver less harmful toxins than regular cigarettes. Because liability could have been avoided, had the manufacturers further warned consumers of the "defect" in Lights, the Manufacturers argue that under <u>Cipollone</u> this claim is pre-empted.

The district court rejected the Manufacturers' characterization of the redhibition claim, noting that defendants "ignore[] the fact that instead of changing [the] labeling, [they] could possibly have designed a light cigarette that would actually deliver less tar and nicotine into the hands of the customer." On this basis, the district court held that:

> Plaintiffs are not asking [Defendants] to change [their] labeling. Plaintiffs are seeking an action in redhibition because the product itself was defective. The FTC method of testing gave lower tar and nicotine measurements than what each light cigarette actually delivered to the human smoker. Hence

> a buyer the right to obtain rescission of the sale.

> A defect is redhibitory also when, without rendering the thing totally useless, it diminishes its usefulness or its value so that it must be presumed that a buyer would still have bought it but for a lesser price. The existence of such a defect limits the right of a buyer to a reduction of the price.

10

> the product was not reasonably fit for its intended purpose – to deliver lower tar and nicotine.  Because this cause of action does not impose a requirement or prohibition based on smoking and health with respect to advertising or promotion, it is not preempted by the Labeling Act.

The district court's language is not inconsistent with that of the plurality in <u>Cipollone</u>, which noted that § 5(b) "does not generally pre-empt state-law obligations to avoid marketing cigarettes with manufacturing defects or to use a demonstrably safer alternative design for cigarettes."  <u>Cipollone</u>, 505 U.S. at 523 (internal quotation marks omitted).  Assuming without deciding that the district court accurately determined that the Plaintiffs' "design defect" theory is a valid redhibition claim,  some redhibition claims might survive the pre-emptive reach of the Labeling Act because the remedy sought might not necessarily implicate Manufacturers' marketing and advertising with respect to the relationship between smoking and health.[4]

---

[4]  The Manufacturers argue that all redhibition claims are failure to warn claims.  They cite three cases in support of this proposition.  In <u>Klem v. E.I. DuPont Nemours & Co.</u>, 19 F.3d 997 (5th Cir. 1994), the court did find that the plaintiffs' redhibition claim "essentially duplicate[s] plaintiffs' failure to warn to claim"; however, that seems to be how the plaintiffs framed their claim, not a necessary quality of redhibition claims generally.  <u>Id.</u> at 1003 ("Plaintiffs contend, in the alternative, that DuPont had a duty to warn, or not to mislead by implication and that the breach of duty sounded in negligence, redhibition, and other areas of law").  Similarly, in <u>Allstate Ins. Co. v. Spectrum Group</u>, No. 97-2615, 1998 WL 690927 (E.D. La. Oct. 2, 1998), the plaintiffs had "abandoned their claims for design and manufacturing defects, and ... focused on their inadequate warnings and redhibition claims.  <u>Id.</u> at *1.  In the final case, <u>In re Airbags Product Liability Litigation</u>, 7 F. Supp. 2d 792 (E.D. La. 1998),

11

Even accepting the district court's generous characterization of the pleadings, however, a review of the record indicates that the Plaintiffs introduced no summary judgment evidence in support of a redhibition claim, in the nature of a design defect, sufficient to create a material issue of fact. See Austin v. Will-Burt Co., 361 F.3d 862, 866 (5th Cir. 2004) (A "nonmovant, to avoid summary judgment as to an issue on which it would bear the burden of proof at trial, may not rest on the allegations of its pleadings, but must come forward with proper summary judgment evidence sufficient to sustain a verdict in its favor on that issue."). At best, Plaintiffs have made the conclusory allegation that Lights are defective because the Manufacturers could have created a cigarette that delivered less tar and nicotine to the smoker. Yet, they have provided no evidence to suggest that this is even possible.[5] We therefore find that Plaintiffs failed to

_____

the court did note that "Plaintiffs contention that the sun visor warnings were inadequate is weakened and preempted by National Highway Traffic Safety Administration Regulations...." Id. at 798. However, the Court rejected the redhibition claims under a different test, finding that a reasonably prudent buyer would have been aware of the alleged defect prior to sale. Id. at 799. In short, none of the cited authority provides conclusive support for Manufacturers' argument that redhibition claims are necessarily equivalent to failure to warn claims; however, we need not decide this issue of Louisiana state law here because we dismiss the claim on other grounds.

[5] Their own deposition testimony would actually point to the contrary conclusion, given that each witness testified to having changed his or her own smoking behavior in order to receive the same levels of nicotine and tar from Lights as they had from regular cigarettes. Plaintiffs offered no evidence to suggest that Lights could be designed to defeat such compensation by smokers.

12

meet their burden at summary judgment, and dismiss their redhibition claim with prejudice.

    B.  Fraudulent Misrepresentation and Suppression

Plaintiffs plead intentional misrepresentations or suppressions as to the true effect of Lights on smokers' health. Plaintiffs alleged that the Manufacturers marketed light cigarettes as being safer than regular brands, when in fact they are actually more harmful. They claim that the Manufacturers' fraud vitiates their consent as to the purchase of Lights and therefore that they are entitled to rescission of all sales of Lights.

The Cipollone Court held that some common law fraud claims are not pre-empted by the Labeling Act because they are based on a general duty not to deceive, not on "smoking and health."  The Court explained that Plaintiffs' concealment claims were not pre-empted to the extent that such claims

> rely on a state-law duty to disclose such facts through channels of communication other than advertising and promotion. Thus, for, example, if state law obliged respondents to disclose material facts about smoking and health to an administrative agency, § 5(b) would not pre-empt a state-law claim based on a failure to fulfill that obligation.

> Moreover, petitioner's fraudulent misrepresentation claims that do arise with respect to advertising and promotion (most notably claims based on allegedly false statements of material fact made in advertisements) are not pre-empted by § 5(b). Such claims are predicated not on a duty "based on smoking and health" but rather on a more general obligation[,] the duty not to deceive.

13

Cipollone, 505 U.S. at 528-29.  Relying on this language, the district court held that "Plaintiff's [sic] claims of fraudulent misrepresentation to the extent that they allege a false representation or concealment of material fact are not preempted by the Labeling Act."

While the district court correctly stated the test for identifying those fraud claims that survive pre-emption, it erred in applying this test to Plaintiffs' claims.  After Cipollone, cigarette manufacturers, under certain circumstances, may be held liable for fraud under state law for affirmative misrepresentations of material fact or for the concealment of material facts.  Plaintiffs here have adequately alleged neither.

1.

Plaintiffs' sole basis for claiming affirmative misstatement in this case is that the Manufacturers used the FTC-approved terms "lights" and "lowered tar and nicotine" in their labeling and advertising to promote their products.  While claims based on "fraud by intentional misstatement" are not pre-empted because Congress did not intend to "insulate" manufacturers from state liability for affirmative lies, Cipollone, 505 U.S. at 529, the use of FTC-approved descriptors cannot constitute fraud. Cigarettes labeled as "light" and "low-tar" do deliver less tar and nicotine as measured by the only government-sanctioned methodology for their measurement.  In fact, the Manufacturers are essentially forbidden from making any representations as to the tar and

14

nicotine levels in their marketing about tar that are not based on the FTC method.[6]  The terms "light" and "lowered tar and nicotine" cannot, therefore, be inherently deceptive or untrue.

Plaintiffs seem to recognize that assigning liability solely on the basis of the FTC descriptors would be problematic.  They therefore argue that the descriptors, although accurate under the FTC method, are misleading because they suggest that Lights are less harmful than full-flavor cigarettes.  The <u>Cipollone</u> Court held that the Labeling Act pre-empts these "implied misrepresentation" claims, which arise from statements or imagery in marketing that misleadingly downplay the dangers of smoking, and thus minimize or otherwise neutralize the effect of the federal mandated safety warnings. <u>Cipollone</u>, 505 U.S. at 527.  The Court explained that as these claims are "predicated on a state-law prohibition against

---

[6]  As the Eighth Circuit said in <u>Watson v. Philip Morris Companies, Inc.</u>:

> The FTC has made it clear that it has not found any other testing method adequate and will consider advertising to be "deceptive" if it deviates from the [FTC] Method.  In an advisory opinion rejecting one company's offer to advertise a tar level higher than the most recent [FTC Method] results, the FTC explained that consumers could be confused if a company were to advertise tar levels that differed from the published [FTC Method] results. That statement, along with others, sent a clear signal to the tobacco companies that they would risk a deceptive advertising claim if they failed to advertise tar and nicotine levels in accordance with the [FTC Method].

420 F.3d 852, 860 (8th Cir. 2005).

15

statements in advertising or promotional materials that tend to minimize the health hazards of smoking," any "[s]uch ... prohibition ... is merely the converse of a state-law requirement that warnings be included in advertising and promotional materials." Id. (emphasis in original).

To hold that the Manufacturers' use of the FTC-approved terms relating to the FTC-approved measurement system constitutes affirmative misstatement under State law would directly undermine the entire purpose of the standardized federal labeling system and most courts have been reluctant to find liability on this basis. In Good v. Altria Group, Inc, 436 F. Supp. 2d 132 (D. Me. 2006), the district court faced a claim similar to that presented here. The court first noted that except for the use of the FTC descriptors, the

> record ... is devoid of any affirmative misstatement. Thus, the Plaintiffs point to no ... representation [by the Defendant] about light cigarettes inconsistent with what the FTC condoned; no evidence [that the Defendant] ever affirmed that light cigarettes were good for you, were healthy, or would not cause the host of physical problems listed on every package; no evidence that any descriptors [the Defendant] applied to [its light cigarettes] contravened what the FTC and Congress knew the tobacco companies as a group and [the Defendant] in particular were saying about these cigarettes.

Id. at 152 (emphasis in original). The court went on to consider "what is it the Plaintiffs would have had [the Defendant] say about light cigarettes that it did not say," id., and concluded that to

16

"respond to Plaintiffs' concerns, [the Defendant] would have to tell the public that the FTC Method test, though accurate in the laboratory, was inaccurate in real life," id., a message that would directly contravene the entire federal cigarette advertising scheme.

What the Good opinion makes clear is that to impose state liability on the basis of the Manufacturers' use of the FTC mandated terms is necessarily to impose a state requirement or prohibition on cigarette advertising as it relates to the relationship between cigarettes and health. As a California state court concluded, in considering a similar set of claims:

> While [plaintiffs] insist that their Lights case does not depend on a finding of whether the Surgeon General's mandated warning is adequate, logic ... dictates otherwise .... because it is obvious that Defendants' alleged deception respecting their use of the term "Light" as part of the brand name of cigarettes that actually contain less tar and nicotine ... could easily be corrected by requiring an additional warning on the packages to the effect that Light cigarettes can be more hazardous than regular cigarettes due to smoker compensation. Hence, in the context of the Federally regulated field of cigarette advertising, the gravamen of Plaintiffs' Light claim is that the warnings mandated by Congress are inadequate with respect to Light cigarettes.

In re Tobacco Cases II, 2004 WL 2445337, at * 21 (Cal. Super. Aug. 4, 2004)(superseded on other grounds by In re Tobacco II Cases, 146 P.3d 1250 (Cal. Nov 1, 2006)). See also Dahl v. R. J. Reynolds Tobacco Co., 2005 WL 1172019, at * 11-12 (D. Minn. 2005). But see,

17

Schwab v. Philip Morris USA, Inc., 449 F. Supp. 2d 992, 1294 (E.D.N.Y. 2006) (holding that plaintiffs' misrepresentation claim under the Illinois Consumer Fraud Act based on defendants' use of the terms "Lights" and "Lowered Tar and Nicotine" is "wholly unrelated to any failure to warn claim and, therefore, not pre-empted.").

We find the reasoning of the majority of courts compelling, and therefore hold that by the express terms of the pre-emption clause, and under the Court's test in Cipollone, fraudulent misrepresentation claims based on the use of FTC-approved descriptors are pre-empted.

### 2.

The Cipollone Court also recognized a second category of unpre-empted misrepresentation claims -- those based on fraudulent concealment of material facts. The Court differentiated between claims based on failures to disclose through advertising and marketing, which are pre-empted, and failures to disclose through "other channels," which are not. Again, while the district court recognized that some concealment claims may avoid pre-emption, it erred in finding such a claim here.

In considering fraudulent concealment claims, most courts have held that any state law claim that would require additional communication between companies and consumers is pre-empted by the Labeling Act. Johnson v. Brown & Williamson Tobacco Corp., 122 F. Supp. 2d 194, 201 (D. Mass. 2000) (holding that any communication

18

from a cigarette manufacturer to the public constitutes advertising or promotion); Sonnenreich v. Philip Morris, Inc., 929 F. Supp. 416, 419 (S.D. Fla. 1996) (holding that comunication by cigarette manufacturers to their customers of the dangers of smoking is an advertising or promotional campaign); Lacey v. Lorillard Tobacco Co., 956 F. Supp. 956, 962 (N.D. Ala. 1997) ("[A] claim that a defendant has a duty to disclose additional information concerning cigarette ingredients unavoidably attacks defendants' advertising and promotion"); Griesenbeck v. Am. Tobacco Co., 897 F. Supp. 815, 823 (D.N.J. 1995) ("A company's attempt to notify its mass market of anything, whether a danger warning or a marketing effort, is considered 'advertising or promotion' under the general usage of those terms, and a state cannot impose requirements on such activities without running afoul of the clear language of Cipollone."). Because a concealment claim relies, by its nature, on an unfulfilled duty to disclose additional information, it would seem unavoidably to impose a state law requirement as to marketing and advertising related to smoking and health.

In advancing their fraudulent concealment claim, Plaintiffs rely primarily on Rivera v. Philip Morris, 395 F.3d 1142 (9th Cir. 2005), in which the Ninth Circuit held that the plaintiffs' failure to warn and fraudulent concealment claims were not pre-empted by the Labeling Act. The Rivera panel determined that Nevada's common law duty requiring manufacturers to advise consumers of their products' dangers does not specify that those disclosures be made

19

through marketing and advertising, and held therefore, that "[a] trier of fact could find that [the cigarette manufacturer] had an obligation to warn consumers of the health risks of smoking outside of packaging, advertising, and promoting." Id. at 1149. While noting that many courts had previously held that "any claim requiring public release or disclosure of information is necessarily related to advertising and promotion," the court rejected this reading as inconsistent with Cipollone and with the Labeling Act. Id. at 1148-49. The court decided instead that by preserving some common law claims, the Cipollone plurality "envisioned continued avenues of research for cigarette manufacturers to perform [their duty to communicate smoking and health information] through means other than the rigorously controlled avenues of advertising, promotion, and packaging." Id.

We consider this general holding of the Rivera court unreasonable. We cannot accept that the Congress meant to create a system in which cigarette manufacturers have the duty both to conform their advertising and marketing to strict federal standards and simultaneously to undercut these representations through other "means," as yet undefined. We therefore join the majority of courts in holding that any state law claim that would require additional communication between companies and consumers is pre-empted by the Labeling Act.

The Rivera panel also upheld the fraudulent concealment claim on the more limited and specific basis that the defendant could

20

have met its state law obligation to disclose material facts by making such disclosures to the industry-established Tobacco Industry Research Committee, analogizing to the Supreme Court's example of an unpre-empted state law obligation to make disclosures to a state agency. Id. at 1149-50. Because the exemption of this state law duty from the reach of §5(b) pre-emption finds explicit support in Cipollone, and because disclosure to the government, and possibly to other entities such as trade organizations, does not fall within the common-sense meaning of advertising and marketing, to the extent that a fraudulent concealment claim relies on this type of failure to disclose, it may not be pre-empted. We see no need to decide this issue at present, however, as Plaintiffs have not addressed either the source of this obligation under Louisiana state law, nor its factual underpinnings in their pleadings or in their brief -- nor are either of these issues discussed by the district court.

We conclude, therefore, that the district court erred in finding that Plaintiffs' claim of fraudulent concealment was not pre-empted.

### C. Breach of Express and Implied Warranties

Plaintiffs allege that the Manufacturers marketed light cigarettes to induce Plaintiffs into believing that in purchasing them, they were avoiding certain health risks. Plaintiffs assert that Manufacturers breached their express and implied warranties of fitness because light cigarettes were not fit for the purpose for

21

which they were marketed.  The district court concluded that Plaintiffs' express and implied warranty claims were not pre-empted by the Labeling Act.  Again, we disagree.

1.

Cipollone indicates that in some circumstances, claims for breach of express warranty may not be pre-empted by the Labeling Act.  In reaching this conclusion, the Cipollone Court reasoned that:

> [w]hile the general duty not to breach warranties arises under state law, the particular "requirement ... based on smoking and health ... with respect to the advertising or promotion [of] cigarettes" in an express warranty claim arises from the manufacturer's statement in its advertisements.  In short, a common-law remedy for a contractual commitment voluntarily undertaken should not be regarded as a "requirement ... imposed under State law" within the meaning of § 5(b).

Cipollone, 505 U.S. at 526 (alterations in original).  Relying on this language, and without reference to the allegations pled, the district court concluded that Plaintiffs' express warranty claim was not pre-empted.

Because the complaint is not explicit in how its claim avoids pre-emption, and because the district court provided no explanation as to the relevant Louisiana law, nor any discussion of the factual basis of Plaintiffs' claim, we can only conclude that the Plaintiffs have failed to properly allege a breach of express warranty under Louisiana law.  The record indicates, however, that the sole basis for this claim is Manufacturers' use of the FTC-

22

sanctioned terms and measurements in their advertising. We therefore consider as a preliminary matter whether breach of express warranty can ever be claimed on the basis of the Manufacturers' use of these descriptors.

The analysis here mirrors our earlier discussion of the Plaintiffs' fraud claims. The use of FTC-approved descriptors, based on the FTC method, cannot be inherently deceptive. To conclude that it is deceptive would be to hold the Manufacturers liable for the inadequacies of the federal testing method, an outcome other courts have declined to accept. See, e.g., Johnson v. Philip Morris, 159 F. Supp. 2d 950, 953 (S.D. Tex. 2001) (holding that "[d]efendants' warranty ... cannot conceivably extend to the validity of a government sanctioned testing method"); Eiser v. Brown & Williamson Tobacco Corp., 2006 WL 933394, at * 7 (Pa. Super. Ct. Jan 18, 2006) (manufacturer "did not expressly warrant that [low tar] cigarettes were a safe alternative to other brands or that smoking [low tar] cigarettes reduced the risk of contracting lung cancer" where it "accurately advertised the fact that [this brand of cigarettes] was lowest in tar and nicotine among all brands tested under the FTC method"); Burton v. R.J. Reynolds Tobacco Co., 884 F. Supp. 1515, 1527-28 (D. Kan. 1995) (finding that plaintiffs' evidence did not support their contention that defendants had expressly warranted that smoking cigarettes does "not present any significant health consequences."); Rodarte v. Philip Morris Co., 2003 WL 23341208 at * 6 (C.D. Cal. June 23,

23

2003) (finding that plaintiff failed to allege breach of express warranty when the only basis of his claim was that defendant had marketed cigarettes as lower in tar and nicotine).

We thus conclude that an express warranty claim arising solely out of the use of descriptors based on the FTC method is pre-empted. In Cipollone, where the plaintiff was permitted to proceed with his express warranty claim, the plaintiff had produced advertisements explicitly stating that there was "proof" that that brand of cigarettes "never ... did you any harm." Cipollone v. Liggett Group, Inc., 893 F.2d 541, 549 (3d Cir. 1990). The defendant in that case was held liable for the additional representations that it made with respect to the safety of its products, not for its use of the FTC-approved descriptors. We therefore hold that the district court erred in finding that Plaintiffs' express warranty claim is not pre-empted by the Labeling Act.

2.

The district court also held that Plaintiffs' claims based on alleged breach of implied warranty are not pre-empted. This holding finds no support in the Cipollone opinion. As Plaintiffs failed to explain the basis of this claim in their pleadings or to argue in support of this claim on appeal, and as the district court failed to provide any discussion of the pre-emption analysis with respect to the claim in its order, we will not consider it for the

24

first time here.  We therefore hold that this claim is dismissed with prejudice.

IV.

For the foregoing reasons, we reverse the judgment of the district court and remand with directions to enter a judgment dismissing all claims with prejudice.

REVERSED AND REMANDED FOR ENTRY OF JUDGMENT.