**Michael S. DAHL, individually and on behalf of all others similarly situated, et al., Appellants,**

v.

**R.J. REYNOLDS TOBACCO COMPANY, et al., Respondents.**

No. A05–1359.

Court of Appeals of Minnesota.

Dec. 4, 2007.

Kay Nord Hunt, Phillip A. Cole, Ehrich L. Koch, Lommen, Abdo, Cole, King & Stageberg, P.A., Minneapolis, MN, and Gale D. Pearson, Martha K. Wivell, Stephen J. Randall, Pearson, Randall & Schumacher, P.A., Minneapolis, MN, for appellants.

Lori Swanson, Attorney General, Mark B. Levinger, Assistant Attorney General, St. Paul, MN, for amicus curiae State of Minnesota.

William L. Davidson, Richard A. Lind, Sara J. Lathrop, Lind, Jensen, Sullivan & Peterson, P.A., Minneapolis, MN, and James S. Simonson, Brian L. McMahon, Gray, Plant, Mooty, Mooty & Bennett, P.A., Minneapolis, MN, for respondents.

## OPINION

DIETZEN, Judge.

Appellants challenge the district court's order dismissing their claims, arguing (1) the claims are not expressly preempted by the Federal Cigarette Labeling and Advertising Act (FCLAA); and (2) the claims are not implicitly preempted by Federal Trade Commission (FTC) oversight of tar and nicotine claims in cigarette advertising. Because the district court erred in concluding that appellants' claims are expressly preempted by the FCLAA, and because we conclude that they are not implicitly preempted, we reverse and remand.

## FACTS

Respondents R.J. Reynolds Tobacco Company and R.J. Reynolds Tobacco Holdings, Inc. are engaged in the business

of manufacturing, marketing, distributing, and selling cigarettes, including "lowered tar" filtered cigarettes under the brand names Camel Lights and Winston Lights, throughout the United States. Appellant Michael Dahl claims that he "has purchased and consumed, on average[,] approximately two packs a day of Camel Lights cigarettes in the State of Minnesota for a period of approximately [20] years." Appellant David Huber claims that he "has purchased and consumed approximately [one-half] pack to one pack a day of Camel Lights, Winston Select, Winston 'No additives' or Winston Lights for approximately the past ten years."

The complaint alleged, among other things, that respondents "sold and packaged Camel Lights and Winston Lights as 'light' and as having decreased tar and nicotine," that they represented that they are light, that is, lower tar and nicotine than regular cigarettes, and that the representation is "deceptive and misleading and constitute[s] unfair business practices." The complaint set forth specific examples of false and misleading representations, which include:

a. Falsely and/or misleadingly representing that their product is "light" and/or delivers lowered tar and nicotine in comparison to regular cigarettes; [and]

b. Describing the product as light when the so-called lowered tar and nicotine deliveries depended on deceptive changes in cigarettes design and composition that dilute the tar and nicotine content of smoke per puff as measured by the industry standard testing apparatus, but not when used by the consumer[.]

Appellants assert causes of action for common law intentional fraud and misrepresentation; unjust enrichment; and violations of the Minnesota Consumer Fraud Act, Minn.Stat. §§ 325F.68–325F.70 (2006), the Minnesota Unlawful Trade Practices Act, Minn.Stat. §§ 325D.09–325D.16 (2006), the Minnesota Uniform Deceptive Trade Practices Act, Minn.Stat. §§ 325D.43–325D.48 (2006), and the Minnesota False Statement in Advertisement Act, Minn.Stat. § 325F.67 (2006).

Respondents moved to dismiss appellants' claims on the grounds of express and implied preemption under the FCLAA, 15 U.S.C. § 1331 (2000), and the United States Constitution. The district court granted respondents' motion, holding that appellants' claims are expressly preempted by the FCLAA. This appeal follows.

## ISSUES

I. Did the district court err in concluding that appellants' state-law claims are expressly preempted by the FCLAA?

II. Are appellants' claims implicitly preempted by the FTC oversight of tar and nicotine claims in cigarette advertising?

## ANALYSIS

### I.

■ Appellants argue that the district court erred in determining as a matter of law that their claims were preempted by the FCLAA. We review a dismissal under rule 12 of the Minnesota Rules of Civil Procedure de novo to determine whether the complaint sets forth a legally sufficient claim for relief. *Bodah v. Lakeville Motor Express, Inc.*, 663 N.W.2d 550, 553 (Minn. 2003). In doing so, we consider only the facts alleged in the complaint, accepting those facts as true and construing all reasonable inferences in favor of the nonmoving party. *Id.; Marquette Nat'l Bank v. Norris*, 270 N.W.2d 290, 292 (Minn.1978). Whether federal law preempts state law is generally an issue of law reviewed de novo.

*Martin ex rel. Hoff v. City of Rochester,* 642 N.W.2d 1, 9 (Minn.2002); *see Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 516, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407 (1992).

### A. The Federal Cigarette Labeling and Advertising Act

The FCLAA is "a comprehensive federal scheme governing the advertising and promotion of cigarettes." *Lorillard Tobacco Co. v. Reilly,* 533 U.S. 525, 541, 121 S.Ct. 2404, 2414, 150 L.Ed.2d 532 (2001). The FCLAA was enacted in 1965 after the Surgeon General concluded that "[c]igarette smoking is a health hazard of sufficient importance in the United States to warrant appropriate remedial action." *Id.* at 542, 121 S.Ct. at 2415 (quotation omitted). The purpose of the act was (1) to adequately inform the public about the hazards of cigarette smoking; and (2) to protect the national economy from interference due to diverse, nonuniform, and confusing cigarette labeling and advertising regulations with respect to the relationship between smoking and health. *Id.* at 542–43, 121 S.Ct. at 2415. The FCLAA mandated that packages of cigarettes have printed on the package the following warning label: "Caution: Cigarette Smoking May Be Hazardous to Your Health." *Id.* at 543, 121 S.Ct. at 2415 (quotation omitted). "The FCLAA also required the Secretary of Health, Education, and Welfare (HEW) and the Federal Trade Commission (FTC) to report annually to Congress about the health consequences of smoking and the advertising and promotion of cigarettes." *Id.* As passed in 1965, section 5 of the FCLAA, captioned "Preemption," provided that:

(a) No statement relating to smoking and health, other than the statement required by [ ] this Act, shall be required on any cigarette package.

(b) No statement relating to smoking and health shall be required in the advertising of any cigarettes the packages of which are labeled in conformity with the provisions of this Act.

Federal Cigarette Labeling and Advertising Act, Pub.L. No. 89–92, 79 Stat. 282, 283 (1965); *see also Cipollone,* 505 U.S. at 514, 112 S.Ct. at 2616 (discussing original preemption language).

The FCLAA was amended in 1969. *Reilly,* 533 U.S. at 544, 121 S.Ct. at 2416. One of the amendments changed the mandated label on cigarette packages to read: "Warning: The Surgeon General Has Determined That Cigarette Smoking Is Dangerous to Your Health." *Id.* (quotation omitted). The 1969 amendments also changed the language of section 5(b) to read:

(b) No requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this Act.

Public Health Cigarette Smoking Act of 1969, Pub.L. No. 91–222, 84 Stat. 87, 88 (1970); *see also Cipollone,* 505 U.S. at 515, 112 S.Ct. at 2617.[1]

---

1. In 1984, Congress again amended the FCLAA, but these amendments did not affect the preemption provision. Instead, the act was amended to change the mandated label on cigarette packages. *Reilly,* 533 U.S. at 545, 121 S.Ct. at 2416. The amendments established a series of warnings to appear on a rotating basis on cigarette packages and in cigarette advertising. *Id.* The amendments also directed the Secretary of Health and Human Services to create and implement an educational program about the health effects of cigarette smoking. *Id.* Since 1964, the FTC

## B. The Federal Preemption Doctrine

■ The preemption doctrine stems from the Supremacy Clause of the United States Constitution, which provides that the laws of the United States "shall be the supreme law of the land ... anything in the Constitution or laws of any state to the contrary notwithstanding." U.S. Const. art. VI, cl. 2. The ultimate touchstone of federal preemption is congressional intent. *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 96, 112 S.Ct. 2374, 2381, 120 L.Ed.2d 73 (1992). And preemption may be express or implied. *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 152–53, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982).

■ Although the doctrine of preemption is firmly rooted, appellants correctly assert that there is a "presumption against preemption." *See, e.g., CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 668, 113 S.Ct. 1732, 1739, 123 L.Ed.2d 387 (1993). "The presumption against preemption is a necessary requirement for a properly functioning and well-balanced federal system." *Harbor Broad., Inc. v. Boundary Waters Broadcasters, Inc.*, 636 N.W.2d 560, 564 n. 1 (Minn.App.2001). The burden of demonstrating preemption rests with the defendant. *See Silkwood v. Kerr–McGee, Corp.*, 464 U.S. 238, 255, 104 S.Ct. 615, 625, 78 L.Ed.2d 443 (1984).

## C. The Preemptive Effect of the FCLAA

Both parties acknowledge that the United States Supreme Court holding in *Cipollone v. Liggett Group, Inc.*, addresses whether state-law damages claims are preempted by the FCLAA. *See Cipollone*, 505 U.S. at 508–09, 112 S.Ct. at 2614–15.[2] In *Cipollone*, the Court considered whether the FCLAA's preemption clause barred a state-law suit for damages brought by a smoker who had allegedly developed lung cancer from the defendants' cigarettes. *Id.* The smoker asserted a number of common-law causes of action, including strict liability, negligent failure to warn, breach of express warranty, fraudulent misrepresentation, and civil conspiracy. *Id.* at 509–10, 112 S.Ct. at 2614. The Court concluded that the preemptive scope of the FCLAA is governed entirely by the express language in section 5 of the act. *Id.* at 517, 112 S.Ct. at 2618.

A plurality of the Court held that common-law claims were neither uniformly preempted nor uniformly allowed by the FCLAA. *Id.* at 523–24, 112 S.Ct. at 2621.[3] Instead, each claim must be examined to determine whether the "legal duty that is the predicate of the common-law damages action constitutes a 'requirement or prohibition based on smoking and health ... imposed under State law with respect to ... advertising or promotion,' giving that

---

has continued to report on trade practices in the cigarette industry. *Id.*

**2.** The Minnesota Supreme Court addressed this same issue three years earlier in *Forster v. R.J. Reynolds Tobacco Co.*, 437 N.W.2d 655 (Minn.1989). The *Forster* holding is contrary to, and thus effectively overruled by, *Cipollone*. Accordingly, on this federal preemption issue, we follow *Cipollone* and not *Forster*. *See Johnson v. Fabian*, 711 N.W.2d 540, 544 (Minn.App.2006) (explaining that United States Supreme Court decision on federal constitutional issue effectively overruled con-

trary prior ruling from Minnesota Supreme Court), *aff'd*, 735 N.W.2d 295 (Minn.2007).

**3.** Although this portion of the *Cipollone* opinion was joined by only four justices, it has been widely followed by the lower federal courts, and we, accordingly, adhere to it as well. *See, e.g., Good v. Altria Group, Inc.*, 501 F.3d 29, 36 (1st Cir.2007), *petition for cert. filed*, 76 U.S.L.W. 3240, —— S.Ct. —— (U.S. Oct. 26, 2007) (No. 07–562); *Brown v. Brown & Williamson Tobacco Corp.*, 479 F.3d 383, 389 (5th Cir.2007) (collecting cases).

clause a fair but narrow reading." *Id.* at 524, 112 S.Ct. at 2621.

The plurality considered each of the smoker's claims to determine whether they were preempted. The plurality first considered, and held preempted, the smoker's failure-to-warn claim, which would "require a showing that respondents' ... advertising or promotions should have included additional, or more clearly stated, warnings." [4] *Id.* The Court similarly held preempted the smoker's fraudulent misrepresentation claim that the "respondents, through their advertising [of cigarettes], neutralized the effect of federally mandated warning labels." *Id.* at 527, 112 S.Ct. at 2623. The plurality explained that this warning-neutralization claim was preempted because it was premised on a requirement or prohibition based on smoking and health imposed by state law. *Id.* Specifically, the fraud claim alleging warning neutralization would impose "prohibition[s] against statements in advertising and promotional materials that tend to minimize the health hazards associated with smoking," which were "merely the converse of a state-law *requirement* that warnings be included in [such] materials." *Id.* Thus, the smoker's first fraudulent-misrepresentation theory was "inextricably related to" the failure-to-warn claim and, accordingly, preempted. *Id.* at 528, 112 S.Ct. at 2623.

But the plurality concluded that the smoker's second theory of fraudulent misrepresentation—that respondents had falsely represented or concealed material facts—was not preempted. The plurality reasoned that this claim was "predicated not on a duty 'based on smoking and health' but rather on a more general obligation[:] the duty not to deceive." *Id.* at

528–29, 112 S.Ct. at 2624. The plurality found no indication that Congress "wished to insulate cigarette manufacturers from longstanding rules governing fraud"; and that the states' proscription of fraudulent advertising was consistent with the purposes of the FCLAA because it did not create " 'diverse, nonuniform, and confusing' standards." *Id.* at 529, 112 S.Ct. at 2624. Rather, "state-law proscriptions of fraud rely only on a single, uniform standard: falsity." *Id.*

Appellants' complaint asserts common-law claims for intentional fraud and misrepresentation and unjust enrichment, and four statutory claims. Following *Cipollone,* we turn to an examination of each claim. We observe that our decision is limited to whether appellants' claims, as pleaded, are preempted by the FCLAA. We do not reach the merits of appellants' claims, nor do we determine whether their allegations are sufficient to state claims under the state common law and statutory law that they invoke. *See id.* at 524, 112 S.Ct. at 2621 (declining to express an "opinion on whether these actions are viable claims as a matter of state law").

### D. Common-law Claims

■ The common-law fraud claim alleges that respondents "knowingly and intentionally engaged in fraud and misrepresentation in its acts and omissions of material facts in its advertisements ... for the purpose of inducing consumers to purchase 'low tar and nicotine' cigarettes." Respondents argue that the claim is not premised on a duty to not deceive, but rather is premised on general concerns about smoking and health. We disagree.

---

4. The plurality allowed that a failure-to-warn claim could be pursued if based solely on "respondents' testing or research practices or other actions unrelated to advertising or promotion." *Cipollone,* 505 U.S. at 524–25, 112 S.Ct. at 2622.

The *Cipollone* Court specifically rejected respondents' argument, holding:

Unlike state-law obligations concerning the warning necessary to render a product "reasonably safe," state-law proscriptions on intentional fraud rely only on a single, uniform standard: falsity. Thus, we conclude that the phrase "based on smoking and health" fairly but narrowly construed does not encompass the more general duty not to make fraudulent statements. Accordingly, [the smoker's] claim based on allegedly fraudulent statements made in respondents' advertisements is not pre-empted by § 5(b) of the 1969 Act.

*Id.* at 529, 112 S.Ct. at 2624. As in *Cipollone,* appellants' fraud claim alleges " 'false representation of a material fact [and by] conceal[ment of] a material fact' " predicated on a "state-law duty not to make false statements of material fact or to conceal such facts." *See id.* at 528, 112 S.Ct. at 2623.

Respondents contend that the more recent case of *Lorillard Tobacco Co. v. Reilly* limits the holding of *Cipollone* and supports its contention that appellants' claims are preempted. In *Reilly,* the United States Supreme Court examined whether regulations restricting the location of cigarette advertisements in order to limit youth exposure were preempted by section 5(b) of the act. 533 U.S. at 546–51, 121 S.Ct. at 2417–19. The Court held that the regulations were preempted by the FLCAA. *Id.* at 548–51, 121 S.Ct. at 2418–19. In doing so, the Court concluded:

The context in which Congress crafted the current pre-emption provision leads us to conclude that Congress prohibited state cigarette advertising regulations motivated by concerns about smoking and health. Massachusetts has attempted to address the incidence of underage cigarette smoking by regulating advertising, much like Congress' ban on cigarette advertising in electronic media. At bottom, the concern about youth exposure to cigarette advertising is intertwined with the concern about cigarette smoking and health. Thus the Attorney General's attempt to distinguish one concern from the other must be rejected.

*Id.* at 548, 121 S.Ct. at 2418 (citation omitted).

Respondents argue that, as in *Reilly,* appellants' claims are intertwined with concerns about cigarette smoking and health and, therefore, preempted. *Reilly,* however, arose under very different circumstances than those in *Cipollone* and this case. Unlike *Cipollone, Reilly* did not involve determining the scope of preemption for state-law damages claims. Instead, the *Reilly* Court addressed positive state enactments directly targeting cigarette advertising. The issue decided by the *Reilly* Court was whether content-neutral regulation of cigarette advertising was "based on smoking and health" within the meaning of the preemption clause of the FCLAA. *Id.* at 546, 121 S.Ct. at 2417. In holding that it was preempted, the Court emphasized the distinction between "generally applicable zoning regulations and regulations targeting cigarette advertising." *Id.* at 549–50, 121 S.Ct. at 2419 (citation omitted). This distinction is consistent with the distinction drawn in *Cipollone* between common-law claims involving duties related to smoking and health and those claims arising out of more generalized duties. *Cipollone,* 505 U.S. at 528–29, 112 S.Ct. at 2624.

■ We do not read *Reilly* to disturb *Cipollone*'s core holding that a state-law "duty not to deceive" is broader than a duty that is based on smoking and health and, therefore, beyond the reach of section 5(b) of the act. Both the holding and

result of *Cipollone* make clear that a claim is not preempted merely because it arises out of the adverse health consequences of cigarettes. *See id.* at 524, 112 S.Ct. at 2621. Clearly, appellants' claims are intertwined with smoking and health. But under *Cipollone,* the fate of each claim is dependent on whether the "legal duty" that is the predicate of the claim constitutes a "requirement or prohibition based on smoking and health" that is imposed by state law regarding the advertising or promotion of cigarettes. *Id.*

We note that there is a split among the federal circuit Courts of Appeals whether fraud claims surrounding the use of the terms "light" or "low tar" in the advertising of cigarettes are preempted by the FCLAA. Respondents suggest that our decision should be guided by *Brown v. Brown & Williamson Tobacco Corp.,* 479 F.3d 383 (5th Cir.2007), in which the Fifth Circuit recently determined that such claims were preempted. Appellants urge that we follow the First Circuit's contrary holding in *Good v. Altria Group, Inc.,* 501 F.3d 29 (1st Cir.2007), *petition for cert. filed,* 76 U.S.L.W. 3240, —— S.Ct. —— (U.S. Oct. 26, 2007) (No. 07–562).

In *Brown,* purchasers of "light" cigarettes brought suit against cigarette manufacturers, alleging that they were deceived by the company's marketing into believing that "light" cigarettes were safer than "regular" cigarettes. 479 F.3d at 386. The *Brown* court observed that the plaintiffs' sole basis for claiming affirmative misstatement was the manufacturer's use of the terms "lights" and "lowered tar and nicotine" in their labeling and advertising; and that these terms were accurate based on the testing of cigarettes under the Cambridge Filter Method, which is the testing method approved by the FTC. *Id.* at 391–92; *see also Good,* 501 F.3d at 30–33 (discussing the Cambridge Filter Meth-

od). The *Brown* court explained, "Cigarettes labeled as 'light' and 'low-tar' do deliver less tar and nicotine as measured by the only government-sanctioned ethodology for their measurement." 501 F.3d at 392. Because they were based on the results of the Cambridge Filter Method test, the *Brown* court concluded that the terms "light" and "low tar" were FTC-approved as well. *Id.* Therefore, the court held that the use of these terms could not constitute fraud. *Id.* (concluding that the terms could not "be inherently deceptive or untrue").

The *Brown* court acknowledged the plaintiffs' argument that the terms "light" and "low tar"—while accurately based on machine testing—were fraudulent when considered in light of the cigarettes' delivery of tar and nicotine to actual human smokers. *Id.* at 392. In other words, the *Brown* plaintiffs argued—as do appellants here—that describing cigarettes as "light" and "low tar" falsely implies that a smoker will inhale less tar and nicotine. *Id.* at 386, 392. But the Fifth Circuit held that this implied misrepresentation theory was a warning-neutralization claim preempted under *Cipollone. Id.* at 392.

Respondents argue that appellants' claims, like those in *Brown,* are based on the manufacturer's use of FTC-approved terms and, therefore, are preempted by section 5(b) of the act. Specifically, respondents argue that appellants' claims cannot prevail because it is undisputed that the terms "light" and "low tar" are accurate under the FTC Cambridge Filter Method and, therefore, consumers cannot be misled. Appellants respond that in *Good,* the First Circuit examined and rejected the holding in *Brown.* Appellants suggest that *Good* is better reasoned and should be followed. We agree.

Like the *Good court,* we conclude that the *Brown* decision conflates an assess-

ment of the merits of a fraud claim with the determination of whether that claim is preempted by the FCLAA. *See Good*, 501 F.3d at 44–46. As the First Circuit explained:

> We think [the Fifth Circuit's] approach puts the cart before the horse. The assertion that Marlboro Lights and Cambridge Lights rate lower in tar and nicotine than their full-flavored cousins according to the Cambridge Filter Method may ultimately affect whether the plaintiffs can show that the challenged statements are false. We do not resolve the issue, however, because Philip Morris did not seek summary judgment on that ground.

*Id.* at 45 (citation omitted). Appellants may ultimately prove unsuccessful in their claims, but this does not influence our preemption analysis. For purposes of this motion to dismiss, we do not go beyond the allegations of the complaint. Rather, we assume that the allegations are true.

We also agree with the *Good* court's rejection of the Fifth Circuit's distinction between express and implied misrepresentation claims and its conclusion that the latter necessarily equate to warning-neutralization claims. *Id.* at 44. As the *Good* court explained, *Cipollone* does not treat claims based on "implied"—as opposed to "express"—representations differently for purposes of FCLAA preemption. *Id.* at 44 n. 18; *see Cipollone*, 505 U.S. at 523, 112 S.Ct. at 2621, 112 S.Ct. 2608 (rejecting argument that "any familiar subdivision of common-law claims is or is not pre-empted"). Here, as in *Good*, appellants do not assert that the "light" term neutralized the federally mandated warnings, but rather that they were deceived into making a purchase that they otherwise would not have. *See Good*, 501 F.3d at 43–44. Again, the burden ultimately will fall on appellants to prove this claim, but we can-

not say that it is preempted under the FCLAA.

Finally, we note that many other courts have concluded that the FLCAA does not preempt fraudulent misrepresentation claims arising out of false statements made in advertising or promoting cigarettes. *See, e.g., Spain v. Brown & Williamson Tobacco Corp.*, 363 F.3d 1183, 1202 (11th Cir.2004); *Mulford v. Altria Group, Inc.*, 506 F.Supp.2d 733, 750–51 (D.N.M.2007); *Johnson v. Brown & Williamson Tobacco Corp.*, 122 F.Supp.2d 194, 203 (D.Mass. 2000); *Izzarelli v. R.J. Reynolds Tobacco Co.*, 117 F.Supp.2d 167, 175 (D.Conn.2000); *Hyde v. Philip Morris Inc.*, C.A. No. 97–0359, 1998 WL 656074, at *6 (D.R.I. May 1, 1998); *Whiteley v. Philip Morris Inc.*, 117 Cal.App.4th 635, 11 Cal.Rptr.3d 807, 842 (2004); *Price v. Philip Morris, Inc.*, 219 Ill.2d 182, 302 Ill.Dec. 1, 848 N.E.2d 1, 33 (2005), *cert. denied*, —— U.S. ——, 127 S.Ct. 685, 166 L.Ed.2d 517 (U.S.2006); *Small v. Lorillard Tobacco Co.*, 252 A.D.2d 1, 15, 679 N.Y.S.2d 593 (N.Y.App.Div. 1998), *aff'd*, 720 N.E.2d (N.Y.1999); *Estate of Schwarz v. Philip Morris Inc.*, 206 Or. App. 20, 135 P.3d 409, 421 (2006) (en banc). In fact, a number of these decisions hold that the FCLAA does not preempt the very theory appellants advance here, that a cigarette manufacturer perpetrated fraud by stating that its light brand offered lower tar and nicotine than its full-flavored one. *See Mulford*, 506 F.Supp.2d at 750; *Price*, 302 Ill.Dec. 1, 848 N.E.2d at 33; *Estate of Schwarz*, 135 P.3d at 421.

Appellants also assert a claim for common law unjust enrichment. The elements of an unjust enrichment claim are: (1) a benefit conferred; (2) the defendant's appreciation and knowing acceptance of the benefit; and (3) the defendant's acceptance and retention of the benefit under such circumstances that it would be inequitable for him to retain it without paying for it.

*Acton Constr. Co. v. State*, 383 N.W.2d 416, 417 (Minn.App.1986), *review denied* (Minn. May 22, 1986). A claim for unjust enrichment does not "lie simply because one party benefits from the efforts or obligations of others, but instead it must be shown that a party was unjustly enriched in the sense that the term 'unjustly' could mean illegally or unlawfully." *First Nat'l Bank of St. Paul v. Ramier*, 311 N.W.2d 502, 504 (Minn.1981).

Appellants' unjust enrichment claim fails to identify any benefit wrongfully accepted and retained by respondents. The claim is simply a recharacterization of appellants' fraudulent misrepresentation claims. But we cannot say that it is preempted under section 5(b) of the act.

### E. Statutory Claims

■ Appellants assert statutory claims under four separate consumer protection statutes: the Minnesota Consumer Fraud Act, Minn.Stat. §§ 325F.68–325F.70; the Minnesota Unlawful Trade Practices Act, Minn.Stat. §§ 325D.09–325D.16; the Minnesota Uniform Deceptive Trade Practices Act, Minn.Stat. §§ 325D.43–325D.48; and the Minnesota False Statement in Advertising Act, Minn.Stat. § 325F.67. Each of these statutes prohibits different types of deceptive conduct,[5] and all provide

claims that are distinct from the common-law duty not to defraud. *See, e.g., Group Health Plan, Inc. v. Philip Morris Inc.*, 621 N.W.2d 2, 12 (Minn.2001) (distinguishing claims under consumer fraud statutes from common-law fraud claims). Like appellants' common-law fraud claim, however, each of the statutes imposes broad duties not to deceive consumers. Applying *Cipollone*, we conclude that these broad statutory claims—like appellants' common-law fraud claim—are not preempted by the FCLAA. *See Cipollone*, 505 U.S. at 528–29, 112 S.Ct. at 2623–24. (stating that "fraudulent-misrepresentation claims that do arise with respect to advertising and promotions (most notably claims based on allegedly false statements of material fact made in advertisements) are not pre-empted by § 5(b)" because these "claims are predicated ... on a more general obligation—the duty not to deceive").

■ We agree with respondents that some of appellants' claims may cross the line established in *Cipollone* and be preempted by the act. Respondents point to specific allegations in various paragraphs of the complaint to support its argument that appellants' claims are preempted. For example, appellants allege in the complaint that (1) "[respon-

5. *Compare* Minn.Stat. § 325F.69, subd. 1 (providing that "[t]he act, use, or employment by any person of fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby, is enjoinable ...."), *and* Minn.Stat. § 325D.13 (providing that "[n]o person shall, in connection with the sale of merchandise, knowingly misrepresent, directly or indirectly, the true quality, ingredients or origin of such merchandise"), *with* Minn. Stat. § 325D.44, subds. 7, 13 (providing that an entity engages in a deceptive trade practice by representing "that goods or services

are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another", or "engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding"), *and* Minn.Stat. § 325F.67 (providing that any corporation that, with intent to sell or in anywise dispose of merchandise directly or indirectly to the public, for sale or distribution, actually disseminates in Minnesota, in any way, an advertisement of any sort regarding merchandise, for use, consumption, purchase, or sale, which advertisement contains any material assertion, representation, or statement of fact which is untrue, deceptive, or misleading, may be enjoined).

dents] failed to inform consumers that the tar in their light cigarette smoke contains higher levels of harmful toxins than the tar in regular cigarette smoke"; and (2) "[respondents] failed to inform consumers that the tobacco in their Camel Lights and Winston Lights was manipulated through the addition of chemicals." To the extent that these claims suggest that respondents had a duty to warn consumers about the dangers of smoking light cigarettes—as opposed to a duty to refrain from fraudulent misrepresentations—they are preempted under *Cipollone* and may not be pursued.[6]

But we read *Cipollone* to require that we focus on the legal duty that gives rise to the cause of action and determine whether it is preempted. Here, appellants' common-law fraud claim and statutory claims are clearly based on intentional fraud and misrepresentation and the duty to not deceive through either misrepresentation of a material fact or omission of a material fact. Accordingly, because counts I through V of appellants' complaint are predicated on the broader duty not to deceive, they are not preempted by the FCLAA. *See id.* at 529, 112 S.Ct. at 2624 (holding that the phrase "based on smoking and health" does not encompass the more general duty not to make fraudulent statements).

## II.

■ Respondents argue that even if appellants' claims are not expressly preempted, they are implicitly preempted because the claims conflict with a comprehensive federal regulatory scheme imposed by Congress. More specifically, respondents contend that Congress designated the FTC to govern cigarette labeling and advertising, and that appellants' claims

conflict with the FTC's "careful regulation of cigarette advertising under its exclusive federal authority."

■ Originally, respondents brought a motion to dismiss under rule 12 for failure to state a legally sufficient claim. But both parties submitted affidavits in support of their arguments concerning implied preemption. The affidavits submitted were narrowly focused on explaining the FTC's authority and conduct relating to the regulation of cigarette advertising. When the district court considers matters outside the pleadings, a motion to dismiss is converted to a motion for summary judgment and the legal issue is whether there are any genuine issues of material fact that preclude summary judgment. Minn. R. Civ. P. 12.02; *see also Carlson v. Lilyerd,* 449 N.W.2d 185, 187 (Minn.App. 1989), *review denied* (Minn. Mar. 8, 1990). But in this case the affidavits submitted by the parties were addressed not to factual issues relating to liability, but to the legal issue of preemption. Because the affidavits were submitted on a question of law, they do not convert the motion to dismiss to a motion for summary judgment. *See Jenisio v. Ozark Airlines, Inc.,* 187 F.3d 970, 972 n. 3 (8th Cir.1999) (a district court may consider documents without converting a motion to dismiss into a motion for summary judgment if the claims relate solely to the interpretation of the documents); *see also Tomran, Inc. v. Passano,* 391 Md. 1, 891 A.2d 336, 342 n. 8 (2006) (consideration of affidavits does not convert a motion to dismiss into a motion for summary judgment when the affidavits address a question of law).

■ Implied conflict preemption exists when "it is impossible for a private party to comply with both state and feder-

6. We note that we do not preclude a subsequent motion to strike particular sentences in the complaint that may conflict with *Cipollone.*

al requirements or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Sprietsma v. Mercury Marine*, 537 U.S. 51, 64, 123 S.Ct. 518, 527, 154 L.Ed.2d 466 (2002) (quotations omitted).[7] "[S]tate laws can be pre-empted by federal regulations as well as by federal statutes." *Hillsborough County, Fla. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 713, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714 (1985).

Here, respondents argue that appellants' state-law damages claims are implicitly preempted because they would frustrate Congress's purpose in vesting regulatory authority over cigarette advertising with the FTC. Respondents do not assert that appellants' claims are implicitly preempted by the FCLAA, an argument that is foreclosed by the Supreme Court's *Cipollone* decision. *See Cipollone*, 505 U.S. at 517, 112 S.Ct. at 2618. Rather, Reynolds argues that the Dahl's claims would stand as an obstacle to the FTC's power, under the Federal Trade Commission Act, 15 U.S.C. § 41 (2000), to regulate cigarette advertising.

The FTC Act prohibits "unfair or deceptive acts or practices in or affecting commerce," 15 U.S.C. § 45(a)(1) (2000), and empowers the commission both to define and enforce that prohibition in a number of ways relevant here. The commission may prescribe either informal "interpretive rules and general statements of policy with respect to unfair or deceptive acts or practices," 15 U.S.C. § 57a(a)(1)(A) (2000), or, pursuant to notice-and-comment procedures, *see id.* § 57a(b)-(e) (2000), formal rules which define those acts and practices "with specificity." *Id.* § 57a(a)(1)(B) (2000). In addition, the commission may

issue cease-and-desist orders against those engaged in violations of the act. *Id.* § 45(b) (2000). The FTC may enforce such orders, as well as its formal rules, by suing violators for either civil penalties, *id.* § 45(m) (2000), or "such relief as the court finds necessary to redress injury to consumers" or other injured parties. *Id.* § 57b(a), (b) (2000).

Here, the question is whether the FTC's authority and actions with respect to cigarette advertising manifests a federal policy to displace state-law damages claims challenging the use of the terms "light" and "low tar." The *Good* court, addressing the same argument, found no implied preemption. 501 F.3d at 55. We agree.

Initially, the *Good* court observed that "the FTC has never issued a formal rule specifically defining which cigarette advertising practices violate the Act and which do not." *Id.* at 51. In explaining the importance of a lack of a formal rule, the court stated that:

> Limiting the preemptive power of federal agencies to exercises of formal rulemaking authority, then, ensures that the states will have enjoyed these protections before suffering the displacement of their laws. This reasoning has particular force in the case of the FTC Act, which imposes procedural requirements on the Commission's rulemaking powers that exceed those of the APA.

*Id.* (citations omitted). The court further noted the FTC Act states that "[r]emedies provided in [15 U.S.C. § 57b] are in addition to, and not in lieu of, any other remedy or right of action provided by State or Federal law." *Id.* at 52 (quotation omitted). Finally, the *Good* court stated that the claims before the court "do not pose a

---

**7.** Implied field preemption exists when Congress evinces the intent to "occupy a field exclusively." *Sprietsma*, 537 U.S. at 64, 123

S.Ct. at 527 (quotations omitted). Respondents do not argue that field preemption applies here.

threat to any federal regulatory objectives apparent in the FTC's approach to tar and nicotine claims in cigarette advertising." *Id.* at 53. Consequently, the court held that the plaintiff's claims were not implicitly preempted. *Id.*

Here, both appellants and respondents submitted affidavits concerning whether the FTC has taken an official position on the definitions of "light" and "lower tar and nicotine" cigarettes. On this record, we cannot detect a consistent federal policy on low-tar claims, let alone one driven by the sort of important means-related federal objectives necessary to preempt conflicting state law. *See Hillsborough County,* 471 U.S. at 717, 105 S.Ct. at 2377 (preemption should not be inferred whenever an agency deals with a problem comprehensively). Accordingly, we conclude that appellants' claims are not implicitly preempted.

### DECISION

Under *Cipollone,* we conclude that appellants' claims are not predicated on a duty "based on smoking and health," but rather on a broader, more general duty to not deceive. As such, we hold that appellants' claims are not expressly preempted by the FCLAA. Because the FTC has never issued a formal rule specifically defining the cigarette advertising practices that violate the FTC Act, or established a clear federal policy on low-tar claims, we conclude that appellants' claims are not implicitly preempted by FTC oversight of tar and nicotine claims in cigarette advertising.

**Reversed and remanded.**