*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1519**

Diversified Water Diversion, Inc.,
Appellant,

vs.

Hogenson Properties, Ltd.,
Respondent.

**Filed May 11, 2015
Reversed
Reilly, Judge**

Hennepin County District Court
File No. 27-CV-13-6241

Todd Wind, Fredrikson & Byron, P.A., Minneapolis, Minnesota (for appellant)

Kelly Vince Griffitts, Griffitts Law Offices, PLLC, Bloomington, Minnesota (for respondent)

        Considered and decided by Reilly, Presiding Judge; Cleary, Chief Judge; and Ross, Judge.

## U N P U B L I S H E D   O P I N I O N

**REILLY**, Judge

        Appellant challenges the district court's order finding against appellant on respondent's unjust-enrichment claim. Because we determine that the district court's conclusions of law are not supported by caselaw governing unjust-enrichment claims and are inconsistent with its factual findings, we reverse.

## FACTS

Appellant Diversified Water Diversion, Inc. (Diversified) is a Minnesota corporation engaged in the business of drain-tile installation. John Gieseke and Arthur Hogenson were the shareholders and officers of Diversified. From the time Arthur Hogenson joined Diversified in 2002 until sometime in 2008, he periodically provided funds to the company from both his personal banking account and from the checking account for respondent Hogenson Properties, Ltd. (Hogenson Properties), a real estate holding company wholly owned by Arthur Hogenson at the time of the distributions. Gieseke treated these funds as shareholder loans payable to Arthur Hogenson, regardless of the source of the funds. Arthur Hogenson did not specify any terms, such as an interest rate, payment schedule, or due date, for these loans, although there was an "assumption" that Diversified would repay the shareholder loans to Arthur Hogenson "when it could."

Diversified made periodic repayments on the loan "when [it] had the money." Because Gieseke considered the funds to constitute shareholder loans from Arthur Hogenson, the loan-repayment checks were "always" written to Arthur Hogenson personally. According to the parties' records, Diversified repaid $100,832.40 of the shareholder loans to Arthur Hogenson. Arthur Hogenson deposited some of these repayment checks into his personal account and some of the checks into Hogenson Properties' business checking account. The parties stipulated that the total loan amount outstanding is $267,906.

In October 2004, an individual named Thomas Fallon suffered an injury at one of Diversified's worksites and initiated a civil action against Arthur Hogenson personally. In September 2007, the district court entered default judgment in Fallon's favor and against Arthur Hogenson in the amount of $737,679.65 after Arthur Hogenson failed to appear for court-ordered arbitration. Arthur Hogenson unsuccessfully moved to vacate the judgment. At some point thereafter, a corporate entity owned by Michael Hogenson, Arthur Hogenson's brother, purchased the right to enforce Fallon's judgment.[1] Michael Hogenson levied Fallon's judgment against Arthur Hogenson's shares in Hogenson Properties and Diversified and became the sole owner of Hogenson Properties.[2]

In August 2009, Arthur Hogenson appealed the district court's denial of his motion to vacate. *Fallon v. Hogenson*, No. A08-2142, 2009 WL 2498699, at *1 (Minn. App. Aug. 18, 2009). We reversed in part, determining that the district court's denial of the motion to vacate on jurisdictional grounds was based on a factual error and remanded for further consideration. *Id.* Following remand, the district court vacated Fallon's judgment in August 2010. We later upheld the district court's decision to vacate this

---

[1] Arthur Hogenson has been engaged in a long-standing feud with his brother Michael Hogenson involving their competing companies. The ongoing dispute between Michael Hogenson and Arthur Hogenson does not bear on the issue of whether Diversified was unjustly enriched by its retention of the shareholder loans and was therefore not addressed in the district court's order or on appeal.

[2] The district court found that Hogenson Properties was administratively dissolved on April 16, 2014. A search of the Office of the Minnesota Secretary of State reveals that Hogenson Properties filed an annual reinstatement on July 29, 2014, and is currently an active business. *See* Minnesota Business & Lien System, Office of the Minnesota Secretary of State, Business Record Details, https://mblsportal.sos.state.mn.us/Business/SearchDetails?filingGuid=337b2787-9fd4-e011-a886-001ec94ffe7f.

judgment. *MWH Props., LLC v. Hogenson*, No. A10–2107, 2011 WL 3654410, at *1-2 (Minn. App. Aug. 22, 2011).

Based on Michael Hogenson's actions in attempting to collect on the Fallon judgment, Arthur Hogenson initiated a separate action against Michael Hogenson in March 2012 for conversion of Arthur Hogenson's shares of stock in Hogenson Properties. The district court partially granted Arthur Hogenson's motion for summary judgment, determining that Michael Hogenson was liable for conversion. The only outstanding issue was the amount of damages owed by Michael Hogenson to Arthur Hogenson as a result of the conversion. The matter proceeded to trial in January 2013. The parties agreed that the value of the company would be established by the value of its assets as of January 30, 2009, less the amount of its liabilities on the same date. Arthur Hogenson argued that the value of the company was enhanced by three promissory notes in favor of Hogenson Properties with Diversified as the obligor and totaling $347,490.71. Arthur Hogenson introduced the notes into evidence at trial for the purpose of valuing his interest in Hogenson Properties.

Gieseke first came to learn of the purported promissory notes around the time of trial when he was subpoenaed to testify regarding these documents. Arthur Hogenson told Gieseke that the notes would not affect Diversified or Gieseke personally, but would help Arthur Hogenson with his tax liability. Gieseke told Arthur Hogenson that he "wouldn't go along with it" and, if called to testify, he would claim that he had no recollection of the promissory notes and could not authenticate them. Gieseke was not called to testify. Arthur Hogenson offered the promissory notes at trial and testified that

4

they were authentic and that he watched Gieseke execute them. Based on the jury's special verdict form, Arthur Hogenson secured an award in the amount of $432,951.99 against Michael Hogenson for conversion.

On January 31, 2013, shortly after the jury returned its verdict, Arthur Hogenson's attorney submitted an affidavit to the district court alerting the court that "the purported promissory notes may very well not be genuine and should not have been offered or received into evidence." The attorney stated that a forensic accountant had advised him that the bad debts could only be written off if they were treated as genuine debt by the parties and documented by promissory notes. The attorney shared this information with Arthur Hogenson. It is believed that Arthur Hogenson fabricated the promissory notes following this communication.

A forensics and data-analysis expert investigated the origin of the documents and determined they were scanned into a computer and modified with a program called PaperPort. Gieseke's signature was an image from another document imposed on the false notes. Arthur Hogenson admitted during a deposition that he used a computer program to "make [the] documents" in late 2012. He created the signature and the dates by copying and pasting them into the documents from another source. Arthur Hogenson stated that he determined the amount of the notes by going back through his checks and calculated the interest by using a program found on the Internet.

On April 9, 2013, Hogenson Properties, now owned by Michael Hogenson, filed a complaint against Diversified asserting claims for breach of contract, promissory estoppel, and unjust enrichment, and seeking declaratory and monetary relief. Hogenson

5

Properties claimed that Diversified executed three promissory notes totaling $347,490.71 to Hogenson Properties and defaulted on those notes by failing to make monthly payments. The complaint sought to declare the total amount of principal and interest due and payable under the acceleration clauses contained in the notes. Diversified filed an answer denying the claims asserted in the complaint and charging that the notes were "not legitimate." Diversified alleged that the notes "are not genuine obligations of Diversified" and are barred by fraud. Diversified also disputed that Hogenson Properties is entitled to collect the repayment funds and challenged the underlying amount of the debt.

The district court held a bench trial on May 5, 2014. In July 2014, the district court issued an order dismissing Hogenson Properties' claims for breach of contract and promissory estoppel, but holding that it was entitled to relief on its unjust-enrichment claim based on the wrongful withdrawal of corporate funds by Arthur Hogenson. The district court entered judgment in favor of Hogenson Properties and against Diversified in the amount of $267,906. This appeal followed.

## D E C I S I O N

Diversified argues that the district court erred by finding in favor of Hogenson Properties on its unjust-enrichment claim. Unjust enrichment is an equitable doctrine. *Southtown Plumbing, Inc. v. Har-Ned Lumber Co.*, 493 N.W.2d 137, 140 (Minn. App. 1992). A grant of equitable relief is within the sound discretion of the district court and will only be reversed upon a showing that the district court abused its discretion. *Nadeau v. Cnty. of Ramsey*, 277 N.W.2d 520, 524 (Minn. 1979). When the case involves

6

application of controlling law to undisputed facts, "it involves a question of law reviewed de novo." *Burnet Realty, Inc. v. Monson*, 479 N.W.2d 432, 433 (Minn. App. 1992). Here, Diversified does not challenge the district court's factual findings but argues that the district court's application of the facts to the law is erroneous. Our review is therefore de novo. *In re Collier*, 726 N.W.2d 799, 803 (Minn. 2007).

Diversified argues that the district court erred when it concluded that the company was unjustly enriched by retaining money that Arthur Hogenson drew from Hogenson Properties' accounts. "The elements of an unjust enrichment claim are: (1) a benefit conferred; (2) the defendant's appreciation and knowing acceptance of the benefit; and (3) the defendant's acceptance and retention of the benefit under such circumstances that it would be inequitable for him to retain it without paying for it." *Dahl v. R.J. Reynolds Tobacco Co.*, 742 N.W.2d 186, 195-96 (Minn. App. 2007), *review denied* (Minn. Jan. 20, 2009). With respect to the first two elements, the district court found that Diversified received funds from Arthur Hogenson and that these funds constituted a loan which Diversified was expected to repay. The record supports these findings. However, with respect to the third element, the district court determined that it would be unjust to allow Diversified to retain the benefit of the loans drawn from Hogenson Properties' account without repayment. Diversified argues that, without a showing that Diversified engaged in wrongful conduct in either obtaining or retaining the benefit of the loan, the third element is absent. We agree.

A claim for unjust enrichment requires a showing that "another party knowingly received something of value to which he was not entitled, and that the circumstances are

7

such that it would be unjust for that person to retain the benefit." *Schumacher v. Schumacher*, 627 N.W.2d 725, 729 (Minn. App. 2001). But an unjust-enrichment claim will not lie simply because one party benefits from the efforts or obligations of others. *First Nat'l Bank of St. Paul v. Ramier*, 311 N.W.2d 502, 504 (Minn. 1981). Rather, to prevail on a claim for unjust enrichment, the claimant must show the other party was "unjustly enriched in the sense that the term 'unjustly' could mean illegally or unlawfully," or that it would be "morally wrong" for the party to retain the benefit. *Id.* (discussing illegal or unlawful enrichment); *Schumacher*, 627 N.W.2d at 729-30 (extending the doctrine of unjust enrichment to morally wrong acts); *Anderson v. DeLisle*, 352 N.W.2d 794, 796 (Minn. App. 1984) (recognizing that fraud may form the basis of an unjust-enrichment claim).

We cannot reconcile the district court's factual findings with its legal conclusions on the question of whether Diversified's retention of the benefit is unjust. The district court found that:

> [Diversified] considered Arthur Hogenson as an individual to be the source of the loans and, to the extent there was an expectation of repaying, repayment was to be made to Arthur Hogenson and not [Hogenson Properties]. This is based on Gieseke's testimony, which the court finds credible. This is also based on the lack of any formal arrangement between Gieseke and Hogenson regarding the loans, which the court finds is more indicative of an understanding between two business owners as opposed to an arrangement between two corporations. The court is also persuaded by the fact [that] [Diversified] exclusively made repayments to Arthur Hogenson as an individual.

This finding is uncontested on appeal and is amply supported by the factual record.

8

In its conclusions of law, the district court dismissed Hogenson Properties' breach-of-contract claims, referencing its earlier factual finding that "the intent of [Diversified] and Arthur Hogenson was that Arthur Hogenson would be paid back directly," and again stating that it found Gieseke's testimony "credible." The district court also dismissed the promissory-estoppel claims, concluding that "there is insufficient evidence of a promise by [Diversified] to [Hogenson Properties]." The district court noted that "[Hogenson Properties] did not produce any direct evidence of such a promise, and the fact [that] [Diversified] consistently made repayments to Art Hogenson individually is inconsistent with the argument [that] [Diversified] made any kind of promise or acted in a way to induce [Hogenson Properties'] reliance."

However, in its analysis of Hogenson Properties' unjust-enrichment claim, the district court determined that:

> [Diversified] . . . received more than a quarter million dollars from [Hogenson Properties'] checking account that it has not repaid. [Diversified's] retention of these funds is wrongful, despite the fact that there was no contract between [the parties].
>
> . . .
>
> [Diversified] knowingly received funds from [Hogenson Properties'] checking account, knowing the funds were to be repaid. It is unjust in this situation to allow [Diversified] to retain those funds, regardless of any borrowing arrangement between [Diversified] and Arthur Hogenson.

The district court's conclusions of law contradict its earlier factual findings and are not supported by Minnesota caselaw.

9

Minnesota law is clear that in order to prevail on a claim of unjust enrichment, "a claimant must establish an implied-in-law or quasi-contract in which the defendant received a benefit of value that unjustly enriched the defendant in a manner that is illegal or unlawful." *Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 838 (Minn. 2012) (citing *First Nat'l Bank of St. Paul*, 311 N.W.2d at 504). Here, there is no evidence of an implied-in-law or quasi-contract between Hogenson Properties and Diversified, nor is there any evidence that Diversified made promises to Hogenson Properties in order to induce action on the company's part. *See Stemmer v. Estate of Sarazin*, 362 N.W.2d 406, 408 (Minn. App. 1985) (holding that equitable doctrines of relief did not apply where there was "no mutual intention to contract so as to warrant fashioning a contract implied in fact" and where actor "made no promises to [claimant] which would have induced any action by them"). Because the district court's conclusions of law are not consistent with governing caselaw and contradict its findings of fact, we conclude that the district court erred and we reverse.

**Reversed.**